[Civ. No. 11557. Second Appellate District, Division One.—November 15, 1938.]

L. F. TURMAN, Appellant, v. MARVIN A. HOLMES, Respondent.

E. R. Simon for Appellant.

Ralph D. Brown for Respondent.

YORK, P. J.—A demurrer was sustained to the original complaint herein and thereafter permission to file an amended complaint was granted upon motion made therefor by appellant. This is an appeal from a judgment of dismissal entered after a general and special demurrer to appellant's amended complaint was sustained without leave to amend.

The questions presented by this appeal are (1) Are the allegations of the amended complaint sufficient to state a

cause of action against respondent? (2) Are such allegations sufficient to toll the statute of limitations as to said cause of action? (3) Is the judgment erroneous?

The instant action is for damages alleged to have been suffered by appellant in the loss of three causes of action which he had theretofore permitted to be barred by the statute of limitations, such inaction of appellant being induced by the false representations of respondent, upon which appellant relied, failing to duly protect his interests.

The amended complaint alleges that by reason of the transactions set forth therein, appellant and his two coowners, H. B. Turman and George C. Ellis (both now deceased), were defrauded of certain mining property situate in Colusa County, California, consisting of 52 acres known as the "Cherry Hill Mine", and of 8½ acres known as the "Boydston Property", having a reasonable market value of $150,000 and containing deposits of gold and quicksilver in commercial quantities with a gross market value of seven millions of dollars, of which property appellant owned a one-fourth interest.

The first thirteen paragraphs of the amended complaint allege a transaction wherein appellant and his coowners were induced by fraudulent representations made to them on October 4, 1927, by Gold Mountain Mines, Inc., and D. L. Peters, president and director thereof, to convey their mining property to the said Gold Mountain Mines, Inc., in return for 100,000 shares of its capital stock having a par value of $1 per share, said D. L. Peters agreeing to sell 50,000 shares of said capital stock within six months for the sum of $37,500. Peters defaulted in his agreement and on June 1, 1928, appellant and his coowners learned that the representations which induced them to sell the mining property were false, whereupon they filed a suit on June 14, 1928, in Colusa County against the said Gold Mountain Mines, Inc., to rescind the sale on the ground of fraud and to recover the said mining property. These said representations made in the course of the first transaction by said Peters and Gold Mountain Mines, Inc., which representations formed the basis of the action of fraud brought in Colusa County, and alleged herein to have been false and fraudulent and made with the intent to deceive and defraud appellant and his associates, are to the effect that said Peters was a man of wealth and of wide experience in mining operations and in handling mining property, and that

said Peters and his corporation would be able to purchase and operate said mining property successfully and at great profit; that the said capital stock of Gold Mountain Mines, Inc., had been approved by the listing company of the New York Curb Market and within thirty days after the conveyance of the mining property to said corporation said stock could be bought and sold on the said curb market; that immediately after such conveyance of said mining property the said Gold Mountain Mines, Inc., a Nevada corporation, would erect and construct thereupon a mill having a capacity of 100 tons daily for the treatment of ores; that said corporation had made arrangements to install such a mill and had the present financial ability to do so; that the said corporation was licensed to do business in the state of California; that the said capital stock had a present market value of 75 cents per share; and that said D. L. Peters had the present financial ability to carry out and perform his contract to purchase 50,000 shares of the capital stock for $37,500. It was further alleged that all of said representations were made as representations of fact and not of opinion, and that all representations made by Gold Mountain Mines, Inc., were made by said D. L. Peters, president of said corporation.

Paragraphs fourteen to nineteen of appellant's amended complaint set forth a second transaction between the same parties in which it is alleged that appellant and his coowners, relying on the false representations of said D. L. Peters and Gold Mountain Mines, Inc., made on or about October 10, 1928, were induced to dismiss their suit in Colusa County, hereinbefore referred to, and it was agreed between the said parties that Peters should be given six months additional time within which to purchase the 50,000 shares of stock of the Gold Mountain Mines, Inc., which he was obligated to purchase under his agreement of October 4, 1927. The false representations in this transaction were to the effect that the said Gold Mountain Mines, Inc., was entering into a contract with Colusa Gold Mines Company to develop and operate the mining property; that said Colusa Gold Mines Company was financially able and had sufficient money with which to erect and construct a mill on the said mining property within the six-month period, but that said Colusa Gold Mines Company would not enter into any agreement for the erection of said mill so long as the action was pending in Colusa County for

the recovery of the mining property from the Gold Mountain Mines, Inc.; that Gold Mountain Mines, Inc., controlled Colusa Gold Mines Company and would control the mining operations on the said property after the erection of said mill and plant. Said Peters wholly failed to perform the terms of his agreement of October 10, 1928; Colusa Gold Mines Company never did erect or construct any mill upon said mining property and was not financially able then or at any other time to construct a mill having a capacity for handling three hundred tons of ore per day, or any other capacity; and that Gold Mountain Mines, Inc., did not control the said Colusa Gold Mines Company.

In August, 1929, the respondent Holmes, who was vice-president and a director of Gold Mountain Mines, Inc., entered the scene and falsely represented to appellant and his coowners that said Gold Mountain Mines, Inc., had conveyed the mining property to Fremont Grant, Inc., and that said latter company had clear legal title thereto, and suggested that if appellant and his coowners would refrain from prosecuting any suit to recover the mining property and also refrain from prosecuting any action against the said D. L. Peters for damages, the said Fremont Grant, Inc., a corporation, would convey the said mining property to Amalgamated Industries, Ltd., a new corporation organized under the laws of the state of Nevada by D. L. Peters and controlled by him, and of which respondent was a director; further, that said Amalgamated Industries, Ltd., would then own clear legal title to the mining property and that it had sufficient funds and resources to, and would, operate and develop said mining property; that the preferred stock of Amalgamated would have a future market value of $5 per share; that respondent and Gold Mountain Mines, Inc., desired that appellant and his coowners should receive in cash the full consideration they were to receive when they deeded the mining property to the Gold Mountain Mines, Inc. Appellant and his coowners, believing and relying upon said representations, did refrain from bringing or prosecuting any cause of action against said D. L. Peters and said Gold Mountain Mines, Inc., to cancel and set aside the said deeds of conveyance to said Gold Mountain Mines, Inc., and did refrain from bringing and prosecuting a cause of action for damages against said Peters and said Gold Mountain Mines, Inc., because of breach of the

contract of October 4, 1927, and of the contract of October 10, 1928, and by such inaction they permitted each and all of said causes of action to become barred by the statute of limitations of the state of California and did nothing to hinder Fremont Grant, Inc., from conveying said mining property to said Amalgamated Industries, Ltd. Said mining property was conveyed to said Amalgamated Industries, Ltd., which took possession thereof by and through respondent as its general manager. Said Amalgamated Industries, Ltd., remained in possession and operated the property until January 8, 1932, when C. B. Conlin took possession under a foreclosure sale under a deed of trust executed by said Amalgamated Industries, Ltd.

It is further alleged that at the time these false representations were made by respondent, he had signed a written statement that Fremont Grant, Inc., was not the owner of said property, but had secured a deed thereto fraudulently paying no consideration therefor, and that in April, 1936, respondent so testified in a deposition taken in an action brought by Colusa Gold Mines Company against Amalgamated Industries, Ltd., and Fremont Grant, Inc., to quiet its title to the said mining property by virtue of a deed executed on November 14, 1928, by respondent as vice-president of Gold Mountain Mines, Inc. Appellant did not learn of the fraud hereinbefore alleged on the part of respondent Holmes until on or about October 1, 1936, when he was informed of the deposition and of the statements made by respondent.

This action was brought on December 30, 1936, seven years and four months after the alleged fraudulent representations were made, to recover the sum of $37,500 in damages and $5,000 exemplary damages.

Appellant's theory of the instant action is that three different and unrelated sets of false representations are set out in the amended complaint, to wit:

*First*, the false representations made October 4, 1927, whereby appellant and his associates were induced to convey the mining property to Gold Mountain Mines, Inc., in return for 100,000 shares of the capital stock of said corporation;

*Second*, the false representations made on or about October 10, 1928, whereby appellant and his associates were induced to dismiss their action in Colusa County for the cancellation of

their conveyance to said Gold Mountain Mines, Inc., and to rescind the sale thereof on the ground of fraud;

*Third,* the false representations made in August, 1929, whereby appellant and his associates, believing and relying upon said false representations, were lulled into a sense of security, and refrained and desisted from and did not prosecute another action for the cancellation of the conveyance of said mining property and refrained from and did not prosecute actions for breach of the contracts of October 4, 1927, and October 10, 1928; and that because of said fraud appellant and his associates permitted said actions to become barred by the statute of limitations.

Appellant further states that the gist of his cause of action is based upon and grows out of the representations made in August, 1929, as set forth in paragraph XX of the amended complaint, to wit: ''That said defendant and said Gold Mountain Mines, Inc., at said time, falsely and fraudulently represented and stated to said L. F. Turman and H. B. Turman and George C. Ellis, that theretofore the Gold Mountain Mines, Inc., had conveyed the clear legal title to the above-described mining property to Fremont Grant, Inc., a corporation organized under the laws of the state of Nevada; that the Fremont Grant, Inc., at that time held clear legal title to said mining property; that when the said Fremont Grant, Inc., had deeded and conveyed said mining property to said Amalgamated Industries, Ltd., the latter corporation would own the full legal title to said mining property free of any liens or encumbrances; that said false representations as to the title to said mining property were made as representations of fact and not of opinion.'' And that all of the other allegations in the amended complaint referring and relating to the representations made in 1927 and 1928 are simply necessary allegations to fully set forth a cause of action growing out of the said false representations of August, 1929, and to show that appellant had three good causes of action which he could have prosecuted in August, 1929. Further appellant states that the damages sought to be recovered are those suffered by him in the loss of the three causes of action which he permitted to be barred by the statute of limitations, such inac-. tivity on his part being induced by the false representations made by respondent in August, 1929.

The amended complaint contains allegations to the effect that appellant did not discover until October 1, 1936, that Gold Mountain Mines, Inc., had conveyed the mining property to Colusa Gold Mines Company by virtue of a deed dated November 14, 1928, executed by respondent as vice-president of Gold Mountain Mines, Inc.; that a few days prior to the date when respondent made the false statements to appellant and his associates in August, 1929, said respondent had signed a written statement that the deed executed by Gold Mountain Mines, Inc., conveying the mining property to said Fremont Grant, Inc., had been wrongfully removed from escrow and recorded and that no consideration had been paid by said Fremont Grant, Inc., for such conveyance and that said Fremont Grant, Inc., had never obtained any title to said mining property; that on or about April 20, 1936, respondent gave a deposition in the case of *Colusa Gold Mines Co. v. Fremont Grant, Inc., and Amalgamated Industries, Ltd.*, relating to the statement which he had signed, and on October 1, 1936, appellant was informed that a judgment had been entered in the said Colusa Gold Mines Company case quieting title to the said mining property in the said company and that the said statement made by respondent was never at any time in the records of or in the possession of the said Gold Mountain Mines, Inc., Fremont Grant, Inc., or Amalgamated Industries, Ltd., but that said respondent concealed said statement, with the result that there was no one from whom appellant and his associates could have learned thereof, or of the facts therein contained, except from respondent.

From the allegations of said amended complaint herein, it becomes apparent that appellant seeks to excuse his lethargy by a claim that even though he was put on inquiry, he could not have discovered the fraud of respondent, because the only avenue of discovery lay in the mind and knowledge of respondent until the summer of 1936 when the Colusa Gold Mines Company recovered judgment in the action quieting title to the said mining property; that such concealment was accomplished by respondent by reason of his possession of the property for Amalgamated Industries, Ltd., by his taking a lease on the property and by a recorded document showing that Amalgamated did own the property and had executed trust deeds thereon,

The amended complaint herein shows upon its face that appellant's cause of action is barred by subdivision 4, section 338, of the Code of Civil Procedure, under which an action for relief on the ground of fraud must be commenced within three years after discovery of the facts constituting the fraud. Furthermore, the allegations of the said amended complaint are insufficient to toll the running of the statute of limitations.

An analysis of the allegations of the amended complaint reveals three fraudulent transactions with respect to the same subject-matter, i. e., the mining property; also that the same party in each instance made the false representations, namely, Gold Mountain Mines, Inc., and as to the first two transactions, those of October 4, 1927, and October 10, 1928, said false representations were also made by D. L. Peters, who was the president and a director of said corporation. Said complaint does not allege that Peters was present and took part in the representations which were made in August of 1929 by respondent Holmes, as vice-president and director of said Gold Mountain Mines, Inc., but it does allege that respondent at that time represented that "theretofore the said D. L. Peters had caused a corporation known as Fremont Grant, Inc., to be organized and that said Peters controlled said corporation; that said D. L. Peters had also organized a corporation known as Amalgamated Industries, Ltd., . . . that said D. L. Peters controlled Amalgamated Industries, Ltd., and was a director and the president of said corporation"; that Gold Mountain Mines, Inc., had conveyed the mining property to Fremont Grant, Inc., and that said D. L. Peters had arranged for Fremont Grant, Inc., to transfer the property to Amalgamated Industries, Ltd.

It is therefore plainly obvious that before appellant entered into the transaction of August, 1929, he knew that D. L. Peters, the man whom appellant alleges had already twice defrauded him, had organized and then controlled both Fremont Grant, Inc., and Amalgamated Industries, Ltd. The suspicions of appellant must have been, or at least should have been, aroused when the proposition of August, 1929, was presented to him and his associates by respondent as vice-president and director of Gold Mountain Mines, Inc. Appellant's earlier experiences of October 4, 1927, and October 10,

1928, should have put him on guard and caused him to inquire into the truth of the statements made by respondent as an officer of said Gold Mountain Mines, Inc., in August, 1929. An inquiry made at that time would have disclosed to appellant all of the facts which he learned for the first time more than seven years thereafter. Because he was dealing with a corporation that had previously defrauded him, appellant was bound to investigate the representations made by respondent in August, 1929. See *Zeller* v. *Milligan,* 71 Cal. App. 617, where it is said at page 624 [236 Pac. 349]: "It may be said that one who would deliberately make a misstatement as to one material fact affecting a transaction should be distrusted as to any and all other material statements affecting the matter, and that because of the distrust thus engendered the person interested in the truth of facts concerned in the transaction would be put on inquiry regarding every fact involved therein; that is to say, his suspicions having been aroused because of one misrepresentation, it thereupon became his bounden duty thoroughly to investigate as to every other representation which in any way had induced the interested person to enter into the contract."

During all of the period here involved, appellant and his associates owned 100,000 shares of the capital stock of Gold Mountain Mines, Inc., and had the right to examine the books and records of that corporation from which the true facts could have been readily ascertained. Even a cursory examination of such records would have disclosed the fact that on November 14, 1928, there had been executed a deed to the mining property by Gold Mountain Mines, Inc., in favor of Colusa Gold Mines Company, which was approximately ten months after Gold Mountain Mines, Inc., had deeded the property to Fremont Grant, Inc.

Since appellant had within his power the means of discovery of the alleged fraud, he must be deemed to have had actual knowledge thereof for more than three years prior to the filing of this action. (*Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, 487 [45 Pac. 809].) That being so, the amended complaint does not state facts sufficient to toll the statute of limitations, and the respondent's demurrer was properly sustained upon this issue.

For the foregoing reasons, the judgment appealed from is affirmed.

Doran, J., concurred.

WHITE, J., Concurring.—I concur. It may be, and probably is, true that appellant made a bad bargain, but by reason of previous contact and business relations with respondent and the discovery by him of what he considered to be false representations, he should have given consideration to all of this before he entered into the contract upon which he now brings this action. While it is true in cases of fraud and misrepresentation when the parties are not upon an equal footing, and where a second false representation has been made upon which the innocent party relied and upon which he had a right to rely, the courts will afford relief; yet when a party makes a bad bargain with his eyes open and after, as in the instant case, a previous fraud or frauds had been perpetrated upon him by the party with whom he is dealing, the courts cannot afford relief. The previous relations existing between the parties to this litigation were such as to put any reasonable or prudent person, situated as was appellant, upon inquiry as to the verity of any representations the other party to the contract might make. Appellant herein showed a total lack of ordinary care and caution.