**BURNHAM CHEMICAL CO. v. BORAX
CONSOLIDATED, Limited, et al.**

No. 11766.

United States Court of Appeals
Ninth Circuit.

Oct. 27, 1948.

Rehearing Denied Dec. 6, 1948.

Sterling Carr, of San Francisco, Cal. (Thurman Arnold, of Washington, D. C., of counsel), for appellant.

Maurice E. Harrison, Moses Lasky, and Brobeck, Phleger & Harrison, all of San Francisco, Cal., and Gurney Newlin, Paul Sandmeyer, and Newlin, Holley, Sandmeyer & Tackabury, all of Los Angeles, Cal., for appellees Borax Consol. Pacific Coast Borax Co. and U. S. Borax Co.

Joseph W. Burns, Fulton, Walter & Halley, Michael F. McCarthy, and Oliver & Donnally, all of New York City, and Charles A. Beardsley, of Oakland, Cal., for appellee American Potash & Chemical Corporation.

Before M A T H E W S, H E A L Y, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a final judgment of the district court entered on May 9, 1947, dismissing appellant's action for treble damages brought in July, 1945 under Section 4 of the Clayton Act, 15 U.S.C.A. § 15. Appellant, a Nevada corporation, brought the action for damages claimed to have been sustained by it as the result of a conspiracy or conspiracies by appellee corporations. The prayer of the complaint is for an award of money (trebled) as damages, for costs, interest and attorneys' fees with a general prayer for other and further relief deemed fit and proper.

Appellant was organized in 1921 for the purpose of producing borax in the State of California and in its complaint asserts that up to 1933 it had invested $1,168,564 in the development of leased property and a patented process. The great length of the complaint makes an adequate summary within reasonable limits of space an impossible task. Many of its 84 paragraphs deal with historic facts concerning the borax industry and charge generally that prior to 1929 world trade in borax was dominated by certain of the appellees, a domination which still exists as a result of unlawful monopoly practices of appellees.

It is alleged generally that appellees conspired in violation of Federal antitrust laws and committed certain overt acts in 1925 and 1928 in pursuance of the conspiracy or conspiracies which caused the damage to appellant and which gave rise to this action; that *all of the acts* done and performed by appellees or some of them were done with the intent and purpose of destroying appellant's activities; that due to said intents, purposes and acts of appellees, the appellant had been damaged in the sum of $1,168,564.

The complaint alleges that for the reasons therein stated the plant and business of plaintiff were shut down and closed on or about January, 1929 since when its struggle for financial rehabilitation was unsuccessful, the resultant loss and damage to appellant being the amount above named, which is the exact amount demanded as a judgment against appellees in the prayer of the complaint.

Reference appears in the complaint, in the evidence at trial, and in the briefs on appeal, to what was declared to be appellees' last "overt act" this act being generally spoken of as "The Little Placer" matter. This was a reference to appellant's efforts (continuing up to filing of suit) to secure a Government lease on a certain tract of California land containing kernite deposits, and it claimed that its efforts before a Government agency were there thwarted by resisting activities of appellees. (See footnote 13.) Relevance of this matter arises from the fact that at the trial the court asked appellant's counsel what (overt) act of appellees occurring *after* 1929 resulted in damage to appellant, aside from the futile attempts to secure a Government lease on The Little Placer. Appellant's counsel responded that nothing else had occurred; that appellant did not

allege any other incidents in its complaint and that it could prove no damage from The Little Placer incident.

Appellant has at all times contended that its complaint is cast in a form which, while demanding treble damages for injuries to a private suitor resulting from violation of the Federal antitrust laws, is nonetheless a suit in equity and not an action at law. Here and below appellees have wholly disagreed with this argument. It presents an important question and we think it necessary to dispose of the issue at the outset by rejecting appellant's theory regarding the character of its pleading, a view that we think finds support in the cases.

An examination of the complaint convinces us that its allegations clearly indicate an intention to state a claim for relief under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note. They describe and charge injuries or damages, some sustained in 1924 or 1925, and others sustained as a result of *acts* (price cutting in 1928 by appellees) which forced appellant to close its plant and business in 1929. We think there can be no doubt that appellant's action should be regarded as an action at law for damages predicated upon a liability created by statute, and not a civil action for equitable relief, as appellant would have it. The form in which the complaint is cast does not serve to disguise or change the basic nature of the claim upon which appellant rests its demand for relief. Where (as here) a private suitor asserts a claim under the Sherman Act for damages, the gravamen of the complaint is not the conspiracy. The damage for which a recovery is allowable is the damage which the suitor has suffered as the result of *acts* of the conspirators directed against him and committed in the course of the conspiracy and in furtherance of its purpose. See cases cited by appellees, infra.

In order that the proceedings in the lower court may be better understood they should be considered in light of the issues raised by the complaint and the material contentions of appellant urged both in that court and on this appeal. For that reason we first present these contentions at some length together with cases cited by appellant as supporting them, since this will serve clearly to delineate and clarify the material issues presented to and decided by the lower court. Appellant's contentions are lengthy and are necessarily summarized.

## Appellant's Contentions

(1) Under the doctrine of Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719, this is an action in equity; (2) *the conspiracy itself* was a *fraud* upon appellant giving rise (thereby) to a claim for relief for fraud; (3) appellant was injured by *this fraud* (the conspiracy itself); (4) appellant's cause of action is founded on, and exclusively on, the 1929 conspiracy and not upon overt acts; (5) because this is an action in equity the State statute of limitations is not applicable; (6) where a plaintiff has been injured by *fraud* (the conspiracy itself) and remains in ignorance of *this fraud* without any fault or want of diligence[1] or care on his part, the bar of the statute of limitations does not begin to run until the fraud is *discovered* though there may be no special circumstances or efforts on the part of the party committing the fraud (of conspiring) to conceal it from the other party, (citing as authority Holmberg v. Armbrecht, supra); (7) in actions *founded* on conspiracy and where fraud and concealment are alleged, the question underlying that of the bar of the statute of limitations is not whether plaintiff had "cause to believe" that conspiratorial action by defendants was responsible for his damage, but whether plaintiff

---

[1] Whether the application of the statute of limitations or the doctrine of laches is concerned in a case where the plaintiff's right to damages is founded on a conspiracy must depend upon whether plaintiff had knowledge of the existence of the conspiracy, or by the exercise of reasonable diligence could have acquired such knowledge. Russell v. Todd, 309 U. S. 280, 60 S.Ct. 527, 84 L.Ed. 754; Benedict v. City of New York, 250 U.S. 321, 328, 39 S.Ct. 476, 63 L.Ed. 1005; Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719.

had "knowledge" of the existence of the conspiracy (this because "cause to believe" is not synonomous with "knowledge") or, having been put on notice, whether plaintiff exercised reasonable diligence to acquire the "knowledge" giving rise to a cause of action;[2] (8) appellant did not know of the existence of the alleged conspiracy and was without means of ascertaining knowledge of such conspiracy until the Federal Government filed suit against most of appellees in September, 1944, (appellant states that the greater part of its complaint is a copy of the Government's complaint) therefore by reason of this ignorance, and its "discovery" of the fraud (through the filing of this 1944 Government suit), neither the statute of limitations, if applicable, nor laches began to run against appellant until this "discovery"; (9) the conspiracy here was a "continuing conspiracy" and it continued, so far as the statute of limitations is concerned, so long as any further action (an overt act) was taken in furtherance of the conspiracy (citing as authority United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168). Reference is also made to Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 and Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; (10) "The Little Placer" incident was such an "overt act," completed in 1945; (11) its action, although personal in form, is brought additionally as a representative of the public interest (see Neumann v. Bastian-

Blessing Company et al., D.C.1947, 70 Fed.Supp. 447), ergo, greater latitude should be shown toward it otherwise public interest will suffer.

As indicated above, these were the basic contentions of appellant advanced at the time of trial.

### The Proceedings Below

Appellees made timely motions to strike portions of the complaint, as amended, and to dismiss for failure to state a claim upon which relief may be granted, and also because the action was barred by a California three-year statute of limitations (Section 338(1) of the California Code of Civil Procedure).[3] Appellees supported their motions by affidavits and appellant filed counter-affidavits. The parties entered into a written stipulation in which it was agreed that appellees' motions should (also) be treated and considered as motions for summary judgment, total or partial, under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. Appellant reserved the right to apply for a separate trial of the issue of the State statute of limitations or any other issue, under Rule 42, R.Civ.P., in the event the motions were denied.

Being of the view that justice and the interests of the parties required that the issue of the State statute of limitations should be resolved preliminarily upon a separate trial, under Rule 42(b), R.Civ.P., before litigating the larger issues involved in the merits of the controversy, the court

---

[2] Holmberg v. Armbrecht, supra; Hansen v. Bear Film Company, 28 Cal.2d 154, 168 P.2d 946; Kimball v. Pacific Gas & Electric Co., 220 Cal. 203, 30 P.2d 39; Pashley v. Pacific Electric Ry. Co., 25 Cal.2d 226, 231, 153 P.2d 325. Also see Hobart v. Hobart Estate Co., 26 Cal.2d 412, 159 P.2d 958 and West v. Great Western Power Co., 36 Cal.App.2d 403, 97 P.2d 1014. As supporting appellant's contentions of the action being deferred until discovery by the aggrieved party under Section 338, subd. (4) Cal.Code of Civil Procedure, see rule announced by the Ninth Circuit in Fleishhacker v. Blum, 109 F.2d 543. On the ground that suspicion on the part of plaintiffs that defendants were violating the antitrust law, and even their belief that such was the fact, does not start the running of the statute of limitations under the doctrine

announced in American Surety Go. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L. Ed. 977; Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, and Shawkee Mfg. Co. v. Hartford Empire Co., 322 U.S. 271, 64 S.Ct. 1014, 88 L.Ed. 1269.

[3] "§ 338 [Within three years.] Within three years:

"1. An action upon a liability created by statute, other than a penalty or forfeiture.

\* \* \* \* \* \* \*

"4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake. [Enacted 1872; Am.Stats.1921, p. 192; Stats.1933, p. 878; Stats.1935, p. 1673.]"

ordered (among other matters) that appellees file special answers setting up the defense of the statute of limitations. In this order the court also reserved decision on the motions to strike and dismiss the cause until this special issue was decided. Rule 12(d), R.Civ.P.

Appellees filed such special answers whereupon appellant claimed that this special defense tendered an issue of fact and demanded (and the court ordered) a jury trial thereon. The court then formulated the special issue to be submitted to the jury, which reads as follows:

"At any time from May 17, 1929, to October 10, 1939, did plaintiff know or have good cause to believe that its business had been theretofore damaged by acts of the defendants in violation of the Anti-Trust laws of the United States?"

Subsequently, a jury was duly empaneled and oral and documentary evidence received at a trial on this special issue of the statute of limitations, the evidence being almost entirely derived from the testimony of George B. Burnham, President and Director of appellant. At the conclusion of the testimony on April 3, 1947, all parties to the action moved for a directed verdict; the court, by a so-called "minute order" thereupon granted the motion of appellees, withdrew the case from jury consideration (appellant tendering no objection when the court had previously indicated that it might later take this step) and dismissed the jury, announcing from the bench that the court would grant appellees' motion to dismiss the cause, and itself decide the issue.

Thereafter and on May 6, 1947, the court entered an order dismissing appellant's cause, with costs to appellees. Subsequently and on May 9, 1947, the court made and entered final judgment dismissing the cause with costs to appellees. By what is obviously an inadvertence, the judgment was made to recite that a directed verdict had been entered, whereas no such verdict was returned due to the procedure adopted by the court.

■ It is clear that the court elected to regard the oral testimony and the various documents, introduced at the jury hearing on the statute of limitations as supplementing the original affidavits filed in support of the motions for summary judgment, and (under the stipulation) as being in the same category and having the same force and relevance as the papers, depositions and admissions which may be employed under Rule 56, R.Civ.P. This posture of the case justified the court in so regarding this additional evidence, and the procedure it adopted appears to be both rational and in harmony with the spirit and purpose of the Rules of Civil Procedure. See R.Civ.P. 43(e). Furthermore, we think that the state of the evidence was such that it was well within its right and its duty in disposing of the special issue of fact without submission to the jury.

■ The opinion expressed by the court when dismissing the jury[4] makes evident that if the case had been given to the jury

---

[4] "* * * The evidence was concluded yesterday, April 2nd. Only one witness testified in the case, the president of the plaintiff corporation, and all evidence on behalf of both the plaintiff and the defendants was elicited either from him or while he was on the witness stand.

"The plaintiff, at the conclusion of the evidence yesterday, moved that the court direct the jury to answer the special inquiry in the negative. The defendants separately moved that the court direct the jury to render a verdict on the special issue in the affirmative. The court may and it should direct a verdict if the evidence is undisputed or if the evidence, even though it be conflicting, be so conclusive that the court, in the exercise of sound judicial discretion, should set aside a verdict in opposition to it. Brady v. Southern Railway Company, 320 U.S. 476 [64 S.Ct. 232, 88 L.Ed. 239]; Farr Company v. Union Pacific Railroad [10 Cir.], 106 F.2d 437; National Mutual Casualty Company [of Tulsa, Okl.] v. Eisenhower [10 Cir.], 116 F.2d 891; Mutual Benefit [Health & Accident Ass'n] v. Snyder, [6 Cir.], 109 F.2d 469; Oklahoma Natural Gas Company v. McKee, [10 Cir.], 121 F.2d 583.

"It appears to the court in this case that the evidence upon the issue now before the jury is undisputed. All of the evidence shows both knowledge and good cause to believe on the part of the plaintiff during the period specified in the special inquiry, that its business had been damaged by acts of the defendants in vi-

574

and it had returned a verdict for appellant, the court would later have felt obligated to set aside the verdict and any judgment entered thereon and grant appellees' motions for summary judgment. Thus, where a party moves for a directed verdict, the court may discharge the jury without receiving a verdict, and, on timely motion, enter judgment as if a verdict had been returned in favor of the moving party. See Bluebird Taxi Corporation v. American Fidelity & Casualty Co., D.C., 26 F.Supp. 808; Ryan Distributing Corporation v. Caley, 3 Cir., 147 F.2d 138, 142; Cf. Domarek v. Bates Motor Lines, 7 Cir., 93 F.2d 522, Rule 50(b), R.Civ.P.

■ Appellant asserts prejudice because the court did not make and enter findings of fact and conclusions of law, claiming that the judgment may not stand without the support of one or the other. Respecting the failure to make findings where the opinion of the trial court is before us, see Hazeltine Corporation v. General Motors Corporation, 3 Cir., 131 F.2d 34, 37. The opinion here provides a clear understanding of the basis of the decision below, and the absence of findings of fact and conclusions of law is not sufficient to justify a reversal in this case.

■ The court was fully persuaded that if the evidence then before it was taken as true, and all reasonable inferences favorable to appellant were drawn therefrom, this evidence would still lead a reasonable man impartially exercising his judgment,

---

olation of the Antitrust Laws. The statements of the president of the defendant corporation, who was the only witness in the case, that he had no knowledge or cause to believe, are opinions, and in the opinion of the court are therefore not proper evidence. However, even if the statements of the president of the corporation, who was the only witness, that he had no knowledge or cause for belief be considered as evidence, the court would still direct a verdict in the affirmative upon the special issue, because the evidence is so conclusive in favor of an affirmative answer upon the special issue that the court would set aside a negative reply by the jury to the special issue. Statements in writing and under oath by the witness Burnham, who was the managing president of the plaintiff, commencing in 1925 and continuing throughout the years to 1940, show without dispute a continued awareness and knowledge of the plaintiff's cause of action set out in the complaint. Not only that, but these writings make continuous claim as to the responsibility of the defendants for the loss and damage caused to the plaintiff's business. Consequently, no mere lip service to the contrary can rise to the dignity of creating a factual conflict for resolution by the trier of the fact. There has been no evidence in the opinion of the court of any fraudulent representation or concealment by the defendants of the plaintiff's cause of action which deterred the plaintiff from timely presentation of its claim in this court. The so-called Zabriskie and Emlaw conversations do not by any stretch of the imagination go beyond denials of the plaintiff's claim. In no sense do they reach the stature of fraudulent representations or concealment of such an affirmative nature as to in law be misleading to the plaintiff. Moreover, the evidence without dispute shows the plaintiff did not rely upon the statements made by these two men and hence there is no proof of any misleading character to be attributed to them.

\* \* \* \* \* \*

"\* \* \* there has been a contention made by the plaintiff that the plaintiff made every effort and used every diligent procedure at its command to endeavor to obtain what it stated to be the necessary evidence in connection with its asserted cause of action. However, the law does not excuse an untimely presentation upon the ground that the party asserting the claim has been unable to obtain others to aid in the presentation of the claim. The burden of presenting an asserted claim in a legal proceeding always rests upon the party who has and asserts it, and he may not excuse untimely presentation because he has been unable to enlist the aid of others in order to bring about adjudication in the court of his claim.

"The plea of the statute of limitations is not a technical one. No court can disregard it because of a personal desire that someone may ultimately obtain recompense for an injury alleged to have been suffered. The statute of limitations plea is as much a component part of the scheme of administration of justice as is the theory that a just claim should be given consideration by a court. There are many reasons why claims must be timely presented. For the reasons the court has stated, the plaintiff's motion for a directed verdict will be denied and the defendants' several motions will be granted."

to conclude that it revealed an entire absence of any genuine issue in the case as to any material fact. Rule 56, R.Civ.P.

The merits of appellant's case were given so thorough an examination at the hearing on the special issue that the resultant judgment was not the product of mere trial by affidavits. We think that this judgment of the court was rested not only upon cases which clearly sustain it but it is also fortified by substantial and convincing evidence of such persuasive and controlling force as to compel its entry. See Brady v. Southern Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 and Farr Company v. Union Pacific Railway Co., 10 Cir., 106 F.2d 437, 439. If the most critical appraisal of the procedure here adopted revealed that employing it worked an invasion of the substantive rights of appellant, or resulted in an injustice on it, we would unhesitatingly condemn it. Rule 61, R.Civ. P. It did not sacrifice the substance of justice to mere form; it produced exactly the same result as though the jury had rendered the directed verdict demanded by appellees. Nor was there error in formulating the controlling issue in the language employed by the trial court.

We note that in appealing from the judgment appellant stated the points on which it intended to rely but did not designate the absence of a formal (jury) verdict. Moreover, appellant did not object in the lower court to the omission of a formal verdict by the jury and does not here assign it as error in its specifications. The objection is technical and we fail to see how appellant is prejudiced by the procedure followed. We think that the absence of a verdict is an irrelevant fact which did not interfere with the disposition of the case on the merits of appellees' motions since on the merits the judgment of the court was clearly right. Nor are findings prerequisite to the validity of the judgment here entered on the motions for summary judgment.

### Specifications of Error

On this appeal appellant specifies as error that the lower court (1) granted appellees' motion to dismiss; (2) entered the judgment appealed from; (3) made the pre-trial order that the special issue to be submitted to the jury be in the words we have quoted above; (4) held that the conspiracy charged in the complaint was not a continuing conspiracy; (5) held that the cause of action was barred by the California statute of limitations; (6) denied appellant's motion for a directed verdict and a new trial on the question of the statute of limitations and (7) refused to allow appellant to read the complaint to the jury.

Whether appellant's claims of error possess merit is best determined by laying them alongside the contentions of appellees and the cases they cite in support thereof. The arguments of appellees are also lengthy and must be summarized.

### Appellees' Contentions[5]

#### A

(a) On the face of the complaint this is a civil (private) action for treble damages arising under the Federal antitrust laws (Sherman Act) and is therefore an action upon a liability created by statute, other than a penalty or forfeiture (see 338 (1) California Code section, supra); (b) as such, it is not based upon any conspiracy, continuing or otherwise, (which the Government might prosecute) which may have been charged since any conspiracy to restrain trade and commerce under these laws does not, in and of itself, give rise to a private cause of action; such a *right* is based solely upon the *injury* or *damage* caused a plaintiff pursuant to the conspiracy;[6] a right of action for violation of the

---

[5] Briefs on behalf of all of the appellees present substantially the same contentions and are considered as one brief.

[6] Nalle v. Oyster, 1913, 230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439; Alexander Milburn Co. v. Union Carbide & Carbon Corporation, 4 Cir., 1926, 15 F.2d 678, certiorari denied 273 U.S. 757, 47 S.Ct. 459, 71 L.Ed. 876; Glenn Coal Co. v.

Dickinson Fuel Co., 4 Cir., 1934, 72 F. 2d 885; Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452. See also Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583, 585; Bruce's Juices v. American Can Co., 330 U.S. 743, 753, 67 S.Ct. 1015, 91 L.Ed. 1219; Sullivan v

Sherman Act is based, not on the conspiracy, but on the *acts* done pursuant thereto which *damage* a plaintiff;[7] (c) appellant's plea that the (mere) existence of the conspiracy and appellant's ignorance thereof is sufficient to invoke the rule that the statute of limitations does not begin to run on an action until this fraud was discovered, is lacking merit and wholly irrelevant; (d) the instant suit for damages under the Sherman Act is an action at law, and not a suit in equity as appellant contends;[8] (e) the test is the type of relief sought (here only money damages) and the mere use of the term "fraud" in the complaint does not transform this suit *into an equitable action since a suit for damages* is a suit at law even though the cause of action be fraud (see Philpott v. Superior Court, 1 Cal.2d 512, 36 P.2d 635, 95 A.L.R. 990; Ambler v. Choteau, 107 U.S. 586, 1 S.Ct. 556, 27 L.Ed. 322 and 12 Cal.Jur. 785, 786); (f) appellant conceded at the trial that an action for damages under the Federal antitrust laws was not an action for fraud but urged that the *charge* of fraud tolled the statute of limitations under the doctrine of Holmberg v. Armbrecht, supra, (a class suit, i. e., a creditor's bill to recover on stockholder's liability under the Federal Farm Loan Act, 12 U.S.C.A. § 812, where the action was necessarily one in equity and could never be at law);[9] (g) the applicable limitations statute is Section 338(1) of the California Code of Civil Procedure, supra; (h) this court in Foster & Kleiser v. Special Site Sign Co., 9 Cir., 85 F.2d 742 held that Section 338(4) of the said California statute is not applicable to a treble damage suit; (i) the mere fact that the alleged conspiracy may have continued subsequent to the time of the alleged damage does not toll the statute of limitations or extend the time within which the action may be brought.[10]

B

(a) The antitrust laws do not contain a statute of limitations and the courts have held that the state statute applies where federally created rights to sue are involved, as in the case at bar;[11] (b) a cause of action for damages for violation of the antitrust laws accrues when the

Associated Billposters and Distributors, 2 Cir., 6 F.2d 1000, 1009, 42 A.L.R. 503; Strout v. United Shoe Mach. Co., D.C., 195 F. 313, 317.

7 Foster & Kleiser Co. v. Special Site Sign Co., supra, and cases cited therein; see also rule applying in civil actions for violation of antitrust law, Alexander Milburn Co. v. Union Carbide & Carbon Corporation, supra, and Momand v. Universal Film Exchange, D.C., 43 F.Supp. 996, 1007.

8 State of Oklahoma v. American Book Co., 10 Cir., 144 F.2d 585; Fleitmann v. Welsbach Street Lighting Co. of America, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505; Williamson v. Columbia Gas & Electric Co., 3 Cir., 110 F.2d 15. Cf. Venner v. Pennsylvania Steel Co., D.C., 250 F. 292, 296.

9 The remedy available in a class suit is in equity. Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160; Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388; Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754; Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241.

10 The contention that a treble damage suit was not barred because the conspiracy alleged was a continuing conspiracy under the rule of United States v. Kissel, supra (a criminal prosecution) was made in the Foster & Kleiser case, supra, where the court pointed out that in a civil action for damages sustained because of a conspiracy in restraint of trade, the right of recovery is not based on the conspiracy, but on the injuries resulting therefrom, a doctrine followed in Momand v. Universal Film Exchange, cited above. See also Twin Ports Oil Co. v. Pure Oil Co., D.C., 46 F.Supp. 149.

11 Chattanooga Foundry and Pipe Works v. City of Atlanta, supra; Campbell v. City of Haverhill, 155 U.S. 610, 616, 15 S.Ct. 217, 39 L.Ed. 280; Foster & Kleiser v. Special Site Sign Co., supra; Bluefields S. S. Company v. United Fruit Company, 3 Cir., 1917, 243 F. 1, writ of error dismissed 248 U.S. 595, 39 S.Ct. 136, 63 L.Ed. 438; Ben C. Jones & Co. v. West Publishing Co., 5 Cir., 1921, 270 F. 563, writ of error dismissed 270 U.S. 665, 46 S.Ct. 208, 70 L.Ed. 789; State of Oklahoma v. American Book Co., supra; Momand v. Universal Film Exchange, supra; Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605; Holmberg v. Armbrecht, supra, 327 U.S. 395, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719; Cope v. Anderson, 331 U.S. 461, 466, 67 S.Ct. 1340, 91 L.Ed. 1602. (The Chattanooga and Bluefields cases were actions for treble damages under the

damage is sustained and the statute of limitations begins to run at that time;[12] (c) the instant cause is predicated upon damages allegedly suffered, and proven to have occurred, on two occasions, first in 1924 and 1925, when appellees allegedly conspired to have the Post Office Department issue a certain fraud order against appellant, and second, in 1928, when under the claimed conspiracy, appellees reduced the price of borax below appellant's cost of production and thereby drove him out of business at the end of 1928 or in January, 1929; (d) appellant charges in its complaint that at this time (January, 1929) and *by reason of these acts* it suffered "loss and damage" in the sum of $1,168,564 which is the exact amount demanded as a judgment for money damages in the prayer of the complaint; (e) information concerning "The Little Placer" incident admittedly was disclosed to appellant by the pleadings in certain Government suits filed in 1944, but, as indicated above, appellant frankly conceded at the trial that while "making an issue" of the incident as an "overt act," it *could not prove any damages from it.*[13]

## C

(a) California cases hold that mere *failure* by a defendant to disclose to a plaintiff the existence of the facts does not constitute "fraudulent concealment" of the cause of action unless a defendant is under a *duty* to disclose these facts, a situation not present in this case;[14] (b) appellant's President, George B. Burnham had a conversation with Emlaw and Zabriskie (officers of certain of appellees) in 1929 in which these officers did nothing more than *deny* that appellees had conspired to cut prices in 1928; (c) that Burnham testified below that these conversations "dispelled" his belief that appellant had a cause of action (see Feak v. Marion Steam Shovel Co., 9 Cir., 84 F.2d 670, 107 A.L.R. 583, certiorari denied 299 U.S. 604, 57 S.Ct. 231, 81 L.Ed. 446 and Turman v. Holmes, 29 Cal.App.2d 198, 84 P.2d 225); (d) the testimony reveals that by their "denials" appellees' officers merely *failed to disclose* the existence of a cause of action, and the statute of limitations is not suspended merely by reason of appellant's ignorance of, or failure to "discover," the existence of the cause of action;[15] (e) no facts are pleaded and proved from which the court may conclude the date of "discovery" other than the sole allegation that appellees fraudulently concealed the cause of action and that this *fact* was not "discovered" until appellant became aware of the "con-

---

Sherman Act.) Barnes Coal Corporation v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645, 647.

[12] Foster & Kleiser Co. v. Special Site Sign Co., supra; Bluefields S. S. Company v. United Fruit Co., supra.

[13] "The Court: Is it your contention, Mr. Carr, that plaintiff was put out of business in 1929 as a result of an unlawful conspiracy, and that the statute does not run as long as the conspiracy continues to be in effect?

"Mr. Carr: No, I don't go that far. My idea would be that it would run from the last overt act.

"The Court: What do you allege in the complaint to be *the last overt act?* (Emphasis supplied)

"Mr. Carr: The Little Placer claim * * * it has no applicability. *We could not prove any damage from it,* but we make a live issue of that thing in the complaint." (Emphasis supplied)

The "overt act" alleged was appellees' opposition to appellant's attempt to secure a lease on the so-called "Little Placer" claim. The Department of the Interior denied appellant a lease on The Lit-

tle Placer claim. Appellant claims that this formal refusal of a Government Department to grant a lease was a result of the conspiracy among appellees which instigated the refusal. See American Banana Company v. United Fruit Company, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047 and Buckeye Powder Co. v. E. I. du Pont de Nemours Powder Co., 248 U.S. 55, 39 S.Ct. 38, 63 L. Ed. 123.

[14] Pashley v. Pacific Electric Co., supra; Kimball v. Pacific Gas & Electric Co., supra; Bryan v. United States, 10 Cir. 1938, 99 F.2d 549, 553, certiorari denied 305 U.S. 661, 59 S.Ct. 364, 83 L. Ed. 429.

[15] Scafidi v. Western Loan and Building Co., 72 Cal.App.2d 550, 165 P.2d 260; Strout v. United Shoe Machinery Co., D. C., 208 F. 646; Lattin v. Gillette, 95 Cal. 317, 30 P. 545, 29 Am.St.Rep. 115; Lambert v. McKenzie, 135 Cal. 100, 67 P. 6; Medley v. Hill, 104 Cal.App. 309, 285 P. 891; Neff v. New York Life Insurance Co., 30 Cal.2d 165, 180 P.2d 900, 171 A.L.R. 563.

cealment" by means of the allegations in the said suits instituted by the Government in 1944; (f) the only *fact* of concealment upon which appellant relies is that in the said suits the Government *accused* appellees of violation of antitrust laws, but this did not provide greater means of discovery than appellant apparently possessed at the time Burnham inquired of Zabriskie, and appellant must allege *facts* which establish that it could not have made the discovery earlier by the exercise of ordinary diligence;[16] (g) finally, giving a private individual a right to recovery does not enlarge the right of a private plaintiff since he must show personal pecuniary damages, his right of action being personal and for his own benefit and not (also) for the benefit of the public (as appellant vigorously contends). The public interest is vindicated by a criminal prosecution while the suit for damages merely redresses the private injury.[17]

## Resume

 Quotations from the lengthy oral testimony and the numerous exhibits, and a detailed analysis of the many cases cited by the parties are not necessary to sustain the conclusion we here reach. The entire record convinces us that under the evidence and upon the authority of the cases the contentions of appellees as to the facts and the law are fully supported and that the judgment of the lower court must be sustained. We agree with the conclusions expressed by that court (see footnote 4) that the record firmly establishes as a fact that during the time from May 17, 1929 to October 10, 1939 appellant knew, or had good cause and reason to believe, that its business had been theretofore damaged and that it had been driven out of business by acts of appellees which violated the antitrust laws of the United States; that ap-

pellant was, during this period, convinced that it had a good case against appellees for the damage it had then suffered and that its attorneys so believed and so advised it. We hold that this is an action at law for damages under Federal antitrust laws and the only damages for which a recovery might be had are those which accrued and were suffered within three years prior to the filing of the complaint and the record reveals that none were shown during this period. The court therefore properly held the cause barred by Section 338(1) of the California statute of limitations.

The judgment is modified by striking therefrom the words "* * * and a directed verdict thereon having been entered * * *" and as so modified, is affirmed.

---

[16] Vertex Investment Co. v. Schwabacher, 57 Cal.App.2d 406, 134 P.2d 891; Lady Washington Consolidated Co. v. Wood, 113 Cal. 482, 486, 45 P. 809; Wood v. Carpenter, 101 U.S. 135, 140, 25 L.Ed. 807; Johnson v. Ehrgott, 1 Cal.2d 136, 34 P.2d 144; Myers v. Metropolitan Trust Co., 22 Cal.App.2d 284, 70 P.2d 992. See also Feak v. Marion Steam Shovel Co., supra; Turman v. Holmes, supra, on what constitutes concealment

and the duty of a party put on notice of fraud.

[17] Maltz v. Sax, 7 Cir., 134 F.2d 2; Ketchum v. Denver & R. G. R. Co., 8 Cir., 248 F. 106; Bruce's Juices v. American Can Co., supra; Keogh v. Chicago & N. W. Ry. Co., 7 Cir., 271 F. 444; United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071.