**DEPARTMENT OF WATER AND POWER OF the CITY OF LOS ANGELES, a Municipal corporation, of and in the State of California, Plaintiff,**

v.

**ALLIS-CHALMERS MANUFACTURING COMPANY et al., Defendants, and 125 other cases.**

**Civ. No. 568-61.**

United States District Court
S. D. California,
Central Division.

Jan. 9, 1963.

Robert E. Moore, Jr., Los Angeles, Cal., for Dept. of Water & Power.

William C. Dixon, Los Angeles, Cal., for City of Burbank, City of Glendale, City of Pasadena.

R. L. Knox, Jr., El Centro, Cal., for Imperial Irrigation Dist.

Marcus Mattson, Lawler, Felix & Hall, Los Angeles, Cal., for Southern Calif. Edison Co., Nevada Power Co., California Elec. Power, San Diego Gas & Elec., Pac. Gas & Elec., and Hawaiian Elec. Co.

Adams, Duque & Hazeltine, Lawrence T. Lydick, Los Angeles, Cal., for I-T-E Circuit Breaker Co.

Henry B. Ely, Los Angeles, Cal., for Foster Wheeler Corp.

Julian O. Von Kalinowski, Gibson, Dunn & Crutcher, Los Angeles, Cal., for Clark Controller Co., Ohio Brass Co.,

Joslyn Mfg. Co., C. H. Wheeler Mfg. Co., Lapp Insulator Co., Inc., the Porcelain Ins. Corp., A. B. Chance Co., the Ohio Brass Co., Square D Co., and McGraw-Edison Co.

William A. C. Roethke, Lillick, Geary, McHose, Roethke & Myers, Los Angeles, Cal., for Kuhlman Electric Co.

John L. Cole, Loeb & Loeb, Los Angeles, Cal., for Federal Pac. Elec. Co., Cornell-Dubilier Electric Corp.

Macdonald & Halsted, Alexander Macdonald, Los Angeles, Cal., for Hubbard and Co.

Musick, Peeler & Garrett, Ralph E. Erickson, Los Angeles, Cal., for Allen-Bradley Co., Cutler-Hammer, Inc.

McCutchen, Black, Harnagel & Shea, Los Angeles, Cal., for General Electric Co.

Newlin, Tackabury & Johnston, Frank R. Johnston, Los Angeles, Cal., for H. K. Porter Co.

Parker, Milliken, Kohlmeier & Clark, Mark Townsend, Los Angeles, Cal., for Wagner Elec. Corp.

Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for Worthington Corp. and Ingersoll Rand.

Sheppard, Mullin, Richter & Hampton, Gordon F. Hampton, Los Angeles, Cal., for Moloney Elec. Co.

Stephens, Jones, LaFever & Smith, Maurice Jones, Jr., Los Angeles, Cal., for Sangamo Electric Co.

Swerdlow, Glikberg & Nicholas, Harry B. Swerdlow, Beverly Hills, Cal., for Westinghouse Electric Corp.

Walker, Wright, Tyler & Ward, Irving M. Walker, Los Angeles, Cal., for Allis-Chalmers Mfg. Co.

BYRNE, District Judge.

These are numerous related antitrust actions brought under Section 4 of the Clayton Act, 15 U.S.C.A. § 15. Defendants have filed motions for partial summary judgment pursuant to Rules 54(b) and 56 of the Federal Rules of Civil Procedure, and have moved under Rule 12 (f), Fed.R.Civ.P. to strike certain allega-tions from plaintiffs' complaints. Plaintiffs are several municipalities, state and local governmental agencies and industrial corporations who use electrical equipment produced by the defendants. Defendants include large national manufacturers of heavy electrical equipment.

The actions forming a basis for these motions arise out of the same alleged conspiracies which led to the indictment of manufacturers of electrical equipment products in the United States District Court for the Eastern District of Pennsylvania in 1960, followed by convictions in 1961. Similar antitrust suits have been instituted throughout the nation and are now pending.

The complaints seek treble damages under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, for alleged conspiracies in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. The complaints generally allege a conspiracy to fix prices of electrical equipment purchased by plaintiffs. Most of the complaints contain two counts, the first alleging a conspiracy at least as early as 1948 and continuing until May of 1960, and the second count alleging a conspiracy beginning at least as early as 1951 in some cases, later in others, and continuing until May of 1960. It is specifically alleged that defendants, through affirmative conduct, had concealed the existence of the conspiracies from the plaintiffs, and that plaintiffs did not learn of the illegal combinations until after the United States had commenced criminal and civil proceedings against defendants in 1960. It is also alleged that plaintiffs could not, by the exercise of reasonable diligence, have discovered the conspiracies prior to the commencement of those proceedings.

Among the measures of concealment alleged are the following: That in communications among themselves concerning the conspiracy the defendants used secret code numbers in identifying themselves or their representatives; that officers and employees of defendants met secretly in various cities where they agreed on prices and on the submission

and allocation of bids to purchasers; that in some instances the defendants used a secret, complex formula, designated as a "phase of the moon" formula to allocate the submission of bids to their purchasers in such a manner that it would appear that the bids were competitive.

Defendants have moved for final partial summary judgment as to all claims based on purchases occurring more than four years preceding the date of the criminal indictments, or more than four years prior to the commencement of these actions in cases in which there were no indictments. They have also moved to strike allegations relating to such purchases and to concealment of the conspiracies.

The basis of defendants' motions is that the plaintiffs' actions with respect to such purchases are barred by the applicable statute of limitations and that fraudulent concealment does not serve to toll that statute of limitations.

The applicable statute of limitations is contained in Section 4B of the Clayton Act, 15 U.S.C.A. § 15b, which provides as follows:

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

This federal statute of limitations for private antitrust suits was enacted on July 7, 1955, to take effect six months thereafter, *viz.*, on January 7, 1956.

The related Section 5(b) of the Clayton Act, 15 U.S.C.A. § 16(b), provides as follows:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

The pivotal issue which is determinative of defendants' motions is one of statutory construction: i. e., is Section 4B to be construed so as to allow its four-year limitation period to be tolled by fraudulent concealment?

Since the enactment of Section 4B, this question has been considered by a number of United States District Courts and by the Courts of Appeals for the Second and Eighth Circuits in cases involving the same factual circumstances which are here present and which led to the Government's action against the electrical companies. The Courts of Appeals for two circuits have held that fraudulent concealment suspends the period of limitations of Section 4B: Atlantic City Electric Co. v. General Electric Co. (2d Cir., 1962), 312 F.2d 236; City of Kansas City Missouri v. Federal Pacific Electric Co. (8th Cir., 1962), 310 F.2d 271. Three district courts in other circuits have also held that fraudulent concealment suspends the time period: United States & Tennessee Valley Authority v. General Electric Co. (E.D.Pa.1962), 209 F.Supp. 197; Commonwealth Edison Co. v. Allis Chalmers Mfg. Co. (N.D.Ill.1962), 210 F.Supp. 557; and Public Service Co. of Colorado v. Allen-Bradley Co., Allis Chalmers Mfg. Co. (D.Colo.1962). Two have taken the opposite view: Brigham City Electric Corp. v. General Electric Co. (D.Utah 1962), 210 F.Supp. 574; Pub-

lic Service Co. of New Mexico v. A. B. Chance Co. (D.N.M.1962).[1]

■ It is the opinion of this Court that the federal doctrine of fraudulent concealment applies to Section 4B of the Clayton Act and that concealment of the conspiracies as here alleged will suspend the running of that statute of limitations.

■■ It is well settled that the all-important and controlling factor in the interpretation or construction of a statute is the legislative intent. See United States v. Rosenblum Truck Lines, 315 U. S. 50, 53, 62 S.Ct. 445, 86 L.Ed. 671 (1941). In ascertaining the Congressional intent, it must be presumed that Congress was aware of the established doctrines of the Supreme Court applicable to the subject matter of the statute. Shapiro v. United States, 335 U.S. 1, 16, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); Exploration Co. v. United States, 247 U.S. 435, 449, 38 S.Ct. 571, 62 L.Ed. 1200 (1918). Consequently, the statute must be read in connection with, and interpreted in the light of those doctrines. See Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); Exploration Co. v. United States, 247 U.S. 435, 449, 38 S.Ct. 571, 62 L.Ed. 1200 (1918).

At the time of the enactment of Section 4B of the Clayton Act in 1955, the federal doctrine of fraudulent concealment had long been firmly established in Supreme Court decisions.

In the landmark case of Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), the Supreme Court was required to determine whether the statute of limitations of the Bankruptcy Act of 1867 had been tolled by the concealment of the fraudulent conduct which was the basis of the cause of action.[2] Although

the statute there required that suit be brought within two years "from the time the cause of action accrued * * *," the Supreme Court held that when the fraud which formed the basis for the suit was either concealed, or is of such a character as to conceal itself, and where there was no negligence or laches on the plaintiff's part in failing to learn of the fraud, the statute did not "begin to run" until the fraud was discovered by or became known to the plaintiff.

In Bailey v. Glover, supra, the Supreme Court took note of a conflict in state court decisions as to whether or not the doctrine of fraudulent concealment would be applied to actions at law as well as to actions in equity, and determined that the doctrine should be applied in both types of actions. Bailey v. Glover, supra, was a suit in equity; however, the statute of limitations there involved was so worded as to apply equally to suits at law or in equity, and the Court, as part of its ratio decidendi, held that the doctrine of fraudulent concealment applies to actions at law as well as in suits in equity.

The philosophy of Bailey v. Glover is that statutes of limitations are designed to prevent frauds, and not to be the means by which fraud is made successful and secure. Thus in speaking of the principles of statutes of limitations the Court said:

> "They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which should show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until

---

1. At least three cases, other than the electrical cases, have construed Section 4B to allow tolling of the limitation period for fraudulent concealment: Gaetzi v. Carling Brewing Co., 205 F.Supp. 615 (E.D.Mich.1962); Dovberg v. Dow Chemical Co., 195 F.Supp. 337 (E.D.Pa.1961); Philco Corp. v. Radio Corp. of America, 186 F.Supp. 155 (E.D.Pa.1960).

2. Section 2 of the Bankruptcy Act of 1867, 14 Stat. 518 (1867), provided in pertinent part as follows: "* * * no suit at law or in equity shall in any case be maintainable by or against such assignee, * * * in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued, for or against such assignee."

such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." 88 U.S. at p. 349, 22 L.Ed. 636.

The doctrine of Bailey v. Glover has been consistently adhered to in subsequent decisions of the Supreme Court. See Rosenthal v. Walker, 111 U.S. 185, 190, 4 S.Ct. 382, 28 L.Ed. 395 (1884), and Traer v. Clews, 115 U.S. 528, 537–538, 6 S.Ct. 155, 29 L.Ed. 467 (1885), both of which also involved the bankruptcy statute of limitations.

In Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918), an action in which the United States sought to cancel certain land patents, the Supreme Court held that the relevant statute of limitations did not begin to run until discovery of the fraud which gave rise to the Government's claim for relief, even though no such provision was made in that statute of limitations. The Court there pointed out that Congress had presumably enacted the relevant statute of limitations with the doctrine of Bailey v. Glover in mind.

■ Although the doctrine of fraudulent concealment might have been limited to cases where the action itself sounded in fraud, it has not been so confined. In fact, the rule has been applied most frequently in actions based upon fraud or in which fraud is the gist of the action, but it is by no means restricted to actions of that character; the rule applies regardless of the nature of the cause of action if the requisite element of fraudulent concealment of the cause of action is present, and it applies to actions at law as well as in suits in equity, 34 Am.Jur. Limitation of Actions § 231, at 188–89 (1938).

The application of this rule in the Federal Courts was extensively considered in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). This case involved a suit in equity brought to enforce liability imposed by Section 16 of the Federal Farm Loan Act. This act imposed liability on stockholders of a bank in the event of bank failure. The plaintiffs failed to learn of defendant's ownership of the stock until the state period of limitations had expired on account of defendant's concealing his title under another name. In holding that the claim for relief was not barred by the relevant state statute of limitations, the Court said:

"And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be not special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' Bailey v. Glover, 21 Wall. 342, 348 [22 L.Ed. 636]; * * *.

"*This equitable doctrine is read into every federal statute of limitation.* If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16, the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception * * * which is the basis of this suit. * * *" (Emphasis added.)

It is clear that the basis of liability was the mere ownership of shares of stock, and the only fraud practiced by defendant was the concealment of the facts on which his liability was grounded. Thus the Supreme Court held, in Holmberg v. Armbrecht, that the federal doctrine of fraudulent concealment applies not only in actions based upon fraud, but also where there is fraudulent concealment of facts which form the foundation for other types of causes of action.

Attempts to minimize the pertinency of the decision in Holmberg v. Armbrecht, supra, to the statute of limitations of Section 4B of the Clayton Act have been made. However, the arguments along these lines are based upon too narrow a view of that case and a failure to appreciate the significance of the general principles therein set forth.

██ It is true that the statute of limitations involved in Holmberg v. Armbrecht, supra, was a borrowed state statute of limitations, borrowed from state law by judicial implication from Congressional silence, and used as a guide to the application of laches. And as indicated in Holmberg v. Armbrecht, supra, the doctrine of fraudulent concealment is so rooted in equitable traditions that it may properly be referred to as an equitable doctrine. Nevertheless, the authority therein relied upon was the leading case of Bailey v. Glover, which held that the federal doctrine of fraudulent concealment applies equally in actions at law and in suits in equity. And although the statute of limitations to which the court applied the federal doctrine of fraudulent concealment was a borrowed state statute of limitations, the holding of the Court as to the requisite elements of the doctrine would seem to apply a fortiori where, as here, Congress has replaced the application of state statutes of limitations in certain civil antitrust suits by a new federal statute of limitations. This is especially so in view of the fact that the Court, in Holmberg v. Armbrecht, expressly said that the equitable doctrine which it was applying and interpreting is one that is read into every federal statute of limitations.

The doctrine of fraudulent concealment has been recognized and applied in private antitrust actions. Prior to the enactment of Section 4B of the Clayton Act in 1955, the federal antitrust laws contained no statute of limitations applicable to private damage suits. Therefore, the federal courts held that private civil antitrust actions for damages were subject to the local state statute of limitations for similar actions. The statute applied was that of the state in which the district court was sitting. See Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742, 751–752 (9th Cir., 1936), cert. denied, 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452 (1937).

Prior to the decision of the Supreme Court in Holmberg v. Armbrecht, discussed supra, there had been few decisions expressly stating whether the federal rule of fraudulent concealment or the state rule of fraudulent concealment would prevail in the event that they were inconsistent. However, most courts probably felt that the doctrine of fraudulent concealment was so interrelated with the statute of limitations that state law should govern. See State of Oklahoma ex rel. Phillips v. American Book Co., 144 F.2d 585 (10th Cir., 1944). See also Foster & Kleiser Co. v. Special Site Sign Co., supra.

After the decision in Holmberg v. Armbrecht, this proposition came to be reexamined. And in Moviecolor, Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir., 1961), the Court of Appeals for the Second Circuit held that the federal rule of fraudulent concealment prevailed in the event of inconsistency with state law where the right is federally created and enforceable only in the federal courts such as is the case in actions under the Clayton Act.

The relevant state law has generally been found to be in accord with the doctrine of fraudulent concealment as announced in Bailey v. Glover. See American Tobacco Co. v. People's Tobacco Co., 204 F. 58 (5th Cir., 1913). And state law has also been found to be in accord with the interpretation of the doctrine of fraudulent concealment made in Holmberg v. Armbrecht, supra, to the effect that the doctrine applies not only in actions based upon fraud, but also where there is fraudulent concealment of facts which form the foundation for other types of causes of action. See Foster & Kleiser Co. v. Special Site Sign Co., supra. Thus the federal courts have long recognized that the fraudulent concealment of a conspiracy in violation of the

antitrust laws operated to toll the applicable statute of limitations borrowed from state law.

In applying the state statute of limitations, it has generally been said that fraud does not constitute the gravamen of an action to recover damages for a conspiracy in violation of the antitrust laws, and that consequently two factors must be present in order to toll the statute of limitations: (1) fraudulent concealment, and (2) nondiscovery, that is absence of facts that would put a party on notice of the cause of action. See Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir., 1936), cert. denied, 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452 (1937); Burnham Chemical Co. v. Borax Consolidated, Ltd., 170 F.2d 569 (9th Cir., 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949); Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 185 F.2d 196 (9th Cir., 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951).

The doctrine of fraudulent concealment has been consistently recognized in Ninth Circuit cases applying Cal.Code Civ.Proc. § 338(1), which provides for a three-year limitation in actions upon a liability created by statute.

Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir., 1936), cert. denied, 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452 (1937), involved an action under the Sherman Act to recover damages alleged to have resulted from an unlawful conspiracy to monopolize. The court found that the evidence did not show fraudulent concealment but rather indicated that the plaintiff had knowledge of sufficient facts to put it on notice of the defendant's activities and resultant damage. In Burnham Chemical Co. v. Borax Consolidated, Ltd., 170 F.2d 569 (9th Cir., 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949), the court acknowledged the fraudulent concealment rule but found that the plaintiff had had knowledge of the facts on which its cause of action was based. In Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 185 F.2d 196 (9th Cir., 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951), the court also answered an argument based on fraudulent concealment with the finding that the plaintiff had known of the facts constituting the basis of its action.

In support of their motion, defendants have urged that the controlling factor in the interpretation of Section 4B is the "single plain meaning" of the words used.

■ Certainly Congress has the power to provide that fraudulent concealment of a conspiracy in violation of the antitrust laws shall not be allowed to toll this statute of limitations. See Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946). However, the "single plain meaning" of Section 4B no more negates the application of the fraudulent concealment rule than have the statutes of limitations involved in numerous other cases in which the Supreme Court has applied the federal doctrine of fraudulent concealment. See Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918); Traer v. Clews, 115 U.S. 528, 537–538, 6 S.Ct. 155, 29 L.Ed. 467 (1885); Rosenthal v. Walker, 111 U.S. 185, 190, 4 S.Ct. 382, 28 L.Ed. 395 (1884); Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874).

Not only was Congress presumptively aware of the federal doctrine of fraudulent concealment as enunciated and applied in decisions of the Supreme Court, but, as will be demonstrated in the following consideration of the legislative history of Section 4B, Congress had actual knowledge of the doctrine of fraudulent concealment as applied by the federal courts in private antitrust actions and evinced a purpose of having the doctrine applied to the new federal statute of limitations.

Defendants further urge in support of their motion that Congress, by providing a specific instance for the suspension of the statute of limitations in Section 5(b), intended thereby to preclude

any implied suspension rule. However, the basic suspension provisions of Section 5(b) had been enacted by Congress in 1914. See 38 Stat. 731 (1914). And when Congress enacted Section 5B of the Clayton Act in 1955, the only amendment made to the suspension provision of Section 5(b) was one adjusting its operation to the new four-year statute of limitations. See 69 Stat. 283 (1914), 15 U.S.C.A. § 16(b).

Thus, it seems far from likely that suddenly in 1955 Congress intended the express suspension provisions of the Clayton Act to preclude the application of the doctrine of fraudulent concealment, which prior to 1955 had been consistently applied in civil antitrust actions subject to state statutes of limitations, and had been consistently applied in actions subject to federal statutes of limitations.

Prior to the enactment in 1955 of H.R. 4954 which became Section 4B, Congress had failed to take action on earlier proposed amendments to the Clayton Act in bills introduced in the First and Second Sessions of the 81st Congress, the 82nd Congress and the 83rd Congress. Some of these proposed amendments to the Clayton Act provided that the statute of limitations would not commence to run until the cause of action was discovered.[3] Defendants have argued that the failure of Congress to enact these proposed discovery provisions demonstrates that Congress intended not to have the fraudulent concealment rule applied to Section 4B.

This argument is based upon the supposition that a rule suspending the running of the statute of limitations until "discovery" is equivalent to the fraudulent concealment doctrine. This supposition is incorrect for it fails to take into account the clear cut distinction made between these two concepts in antitrust suits.

Thus in Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742, 752 (9th Cir., 1936), the Ninth Circuit Court of Appeals, in applying the California doctrine of fraudulent concealment to an action under the Sherman Act, stated that: "in order to toll the applicable statute of limitations, two factors must be present: (1) Fraudulent concealment; (2) nondiscovery, that is, absence of facts that would put a party upon notice of the cause of action. Mere ignorance of the injury complained of, or of the facts constituting such injury, will not prevent the running of the statute." See also Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 185 F.2d 196 (9th Cir., 1950), and Burnham Chemical Co. v. Borax Consolidated, Ltd., 170 F.2d 569 (9th Cir., 1948).

These cases defining fraudulent concealment in the context of antitrust suits are in harmony with the exposition of that doctrine given by the Supreme Court in Bailey v. Glover, supra, and restated in Holmberg v. Armbrecht, supra, 327 U.S. at p. 397, 66 S.Ct. at p. 585, 90 L.Ed. 743, to the effect that where fraudulent concealment has been practiced, the statute of limitations does not begin

---

3. The contents of the prior bills and the related committee proceedings are contained in the following cited documents:

Hearings Before Subcommittee of Senate Committee on the Judiciary. 81st Cong., 1st Sess. [on S.1910] Pts. 1 and 2 (1949) (S.1910 is identical with H.R. 4985).

Hearings Before Subcommittee on Study of Monopoly Power of the House Committee on the Judiciary. 81st Cong., 2nd Sess. [on H.R. 7905] Ser. No. 14, Pt. 5 (1950).

House Report No. 2467, from Committee on the Judiciary, 81st Cong., 2d Sess. [to accompany H.R. 8763] (1950).

96 Cong.Record, 81 Cong. 2d Sess. (on H.R. 8763), pp. 10437–10444 (July 17, 1950).

Hearings Before Subcommittee on Study of Monopoly Power of the House Committee on the Judiciary, 82nd Cong., 1st Sess. [on H.R. 3408] Ser. No. 1, Pt. 3 and Supp. to Pt. 3 (1951). (Identical with H.R. 1323).

82nd Cong., 1st Sess. [on H.R. 1986].
82nd Cong., 1st Sess. [on H.R. 109].
83rd Cong., 1st Sess. [on H.R. 467].

to run until after plaintiff has discovered *or failed in reasonable diligence to discover the deception.*

Furthermore, the legislative history of Section 4B contains positive indications that Congress intended the continued application of the fraudulent concealment rule to treble damage actions. These indications are found in the House debate on the bill, H.R. 4954 enacted into law in the First Session of the 84th Congress. Congressman Celler, the sponsor of the bill, explained its purpose; at one point Congressman Patman interrupted and the following exchange took place:

"Mr. Patman. Does that 4 years apply to conspiracy cases? Suppose there is a conspiracy, and it is 10 years before the conspiracy is known.

"Mr. Celler. In the case of conspiracy or fraud, the statute only runs from the time of discovery.

"Mr. Patman. From the time of the discovery?

"Mr. Celler. In conspiracy cases and cases of fraud.

"Mr. Patman. And it is not the object or intention to change that at all?

"Mr. Celler. That is correct." 101 Cong.Rec. 5129 (1955).

Congressman Keating, also a member of the Judiciary Committee, then added a brief explanation of the bill, and Congressman Patman raised the same question again as follows:

"Mr. Patman: Does the gentleman agree with the chairman that the 4-year limitation does not commence to apply in a conspiracy until the conspiracy becomes known?

"Mr. Keating. I would want to have the law on that checked by the counsel for our committee. I have an impression that there have been decisions under the present conspiracy statute, which is not in any way interfered with by this legislation, to the effect that the statute of limitations does not begin to run until discovery of the conspiracy. But I would not want to make a positive assertion to the gentleman on that point without further investigation of the law.

"Mr. Patman. Notwithstanding the fact that the discovery was made years later?

"Mr. Keating. I would be happy to yield to the chairman of the committee, who may have investigated that precise point.

"Mr. Celler. Yes, I have. The statute only said from the time of discovery in that kind of case. The basis for my conclusion in that regard is the cases themselves. There are innumerable cases on that score.

"Mr. Keating. I am happy to have that enlightenment." 101 Cong.Rec. 5130 (1955).

Later in the discussion the following exchange took place between Mr. Patman and Mr. Celler:

"Mr. Patman. Mr. Chairman, after the word 'accrued' in line 7, page 2, I have an amendment prepared to include the phrase 'and became known' so as to make it clear that the cause of action or that limitation would not commence to run against a cause of action until it is discovered, until it became known, and, therefore, I would like to ask the chairman of the committee this question: Is it your understanding, Mr. Chairman, that limitation will not commence to run on the cause of action until after it is discovered, 4, 6, or 10 years hence?

"Mr. Celler. The statute of limitations will start running from the time the action accrues, not from the time of discovery. If you make it time of discovery, then you practically have no statute of limitations at all. An action could have accrued and the person aggrieved might not have heard of it for 20 years. Under the suggested amendment he would have a right to bring an action after 20 years, after the evidence will have

been lost, and the defendant would be put in a rather deplorable situation in that regard. We provide that the 4-year statute shall start to run from the time of the accrual of damages, from the time the wrong was done, not from the time of discovery.

"Mr. Patman. Even in the case of fraud or conspiracy?

"Mr. Celler. No. In the case of fraud or conspiracy the statute of limitation only runs from the time of discovery.

"Mr. Patman. That is the point I wanted to make sure of. You are not attempting to change that particular part of it?

"Mr. Celler. Not at all." 101 Cong.Rec. 5132, 5133 (1955).

The exchange between Mr. Patman and Mr. Celler makes it clear that it was the intent of Congress to leave the fraudulent concealment doctrine applicable to actions under the Clayton Act affected by the new statute of limitations. Defendants have urged that Congressman Celler's reference to "discovery" was in error because it could only have reference to the "discovery rule" rejected by Congress in 1949 and 1950. I do not agree. Congressman Celler was answering Mr. Patman (who had argued for the "discovery rule") with the statement that in the case of fraud or conspiracy the statute of limitation of Section 4B would not run until discovery. It is clear from Mr. Patman's remark, "You are not attempting to change that particular part of it," that he understood Mr. Celler to be saying that the statute of limitations would continue to run from the time of discovery under Section 4B in those types of cases in which the statute had commenced upon discovery prior to the adoption of Section 4B. This could only have reference to the fraudulent concealment rule.

▮ Congressman Celler was the sponsor of the bill and the Chairman of the Judiciary Committee which studied this problem. Therefore, his statements in explaining the bill to the House, and the answers made by him to questions asked by members may be considered in construing the bill as it was subsequently enacted into law. These statements are in the nature of supplemental committee reports and are entitled to the same weight accorded to formal committee reports. See Duplex Printing Co. v. Deering, 254 U.S. 443, 475, 41 S.Ct. 172, 65 L.Ed. 349 (1921), and 2 Sutherland, Statutory Construction § 5012, pp. 503–04 (3d ed. 1943).

Defendants have urged that since Section 4B is a part of the Clayton Act, it should be held to constitute a "substantive" statute of limitations and, therefore, not subject to tolling on equitable grounds including fraudulent concealment.

There is some authority to support the proposition that where a statute creates a cause of action that did not exist before and at the same time establishes a period of limitation within which it must be brought, the running of the statute of limitations destroys the right itself and cannot be tolled for any reason. See Adams v. Albany, 80 F.Supp. 876, 881 (S.D.Cal.1948).

However, in Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (4th Cir., 1949), the Court of Appeals for the Fourth Circuit convincingly demonstrated that the distinction between the two classes of statutes of limitations—the remedial and the substantive—is not so clear as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect to fraud in the other type (substantive). And in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), a case involving "estoppel" rather than fraudulent concealment, the Supreme Court held that the substantive statute of limitations of the Federal Employers' Liability Act would be tolled by acts of the defendant giving rise to the estoppel. In speaking of the doctrine

of estoppel to assert the statute of limitations, the Court said:

"We have been shown nothing in the language or history of the Federal Employers' Liability Act to indicate that this principle of law, older than the country itself, was not to apply in suits arising under that statute." 359 U.S. at p. 234, 79 S.Ct. at p. 762, 3 L.Ed.2d 770.

The doctrine of estoppel to assert a statute of limitation is closely akin to the fraudulent concealment rule. Both principles are deeply rooted in our jurisprudence and have been frequently employed to bar inequitable reliance on statutes of limitations. And the refusal of the Supreme Court in Glus v. Brooklyn Eastern District Terminal to analyze the applicability of the estoppel doctrine in terms of technical distinctions between substantive and procedural statutes of limitations seems to indicate the proper course to be taken by the federal courts generally in construing and applying Congressionally enacted statutes of limitations.

■ Furthermore, this Court is of the opinion that Section 4B of the Clayton Act is "procedural" within the most meaningful sense of that term. It was not passed as an integral part of the statute creating the cause of action, but many decades later. It was passed because of the need for a uniform statute of limitations to replace the applications of the many and varying statutes of limitations of the states where suits were instituted. See 101 Cong.Rec., 84th Cong. 1st Sess., pp. 5129-30 (1955). The statutes replaced were indubitably procedural, and the amendment was thus intended to eliminate what Congress regarded as perplexing procedural problems.

■ Finally, this Court is of the opinion that any distinction between procedural and substantive statutes of limitations, with relation to the question of tolling for fraudulent concealment, fade into insignificance where, as here, there are abundant other indicia of Congressional intent to have the fraudulent concealment rule apply to a particular statute of limitations. Certainly Congress has the power to enact a statute of limitations, call it substantive, and provide that the time period will be tolled by fraudulent concealment. Therefore, any distinction which might be made between substantive and procedural statutes of limitation can only serve as a guide to construction. Here, the legislative history of Section 4B, discussed supra, contains positive indications that the fraudulent concealment rule, adhered to in "innumerable cases," should continue to apply to the new four-year statute of limitations.

The defendants' motions are denied.

Messrs. Lawler, Felix & Hall are directed to prepare, serve and lodge a formal order pursuant to Rule 7 of the Rules of this Court. The order shall include a provision permitting an immediate appeal pursuant to 28 U.S.C.A. § 1292(b).