**CITY OF BURLINGTON, VERMONT,
Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION et al., Defendants.**

Civ. A. Nos. 348–62 to 350–62, 359–62 to 365–62, 405–62 to 410–62, 420–62 to 427–62, 432–62 to 438–62, and 2829–62.

United States District Court
District of Columbia.

March 5, 1963.

———◆———

Charles S. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., for City of Albemarle, N. C.

Elmer F. Bennett, Ely, Duncan & Bennett, Washington, D. C., for City of Burlington, Vt., City of Hagerstown, Md., the State of Maryland and its State Roads Commission, and City of Vineland, N. J.

Robert E. Sher, James H. Heller, Sher, Oppenheimer & Harris, Washington, D. C., for the Puerto Rico Water Resources Authority.

Chester H. Gray, Corp. Counsel, D. C., John A. Earnest, James M. Cashman, Asst. Corp. Counsel, Washington, D. C., for District of Columbia.

Miles W. Kirkpatrick, Don B. Blenko, Philadelphia, Pa., Arthur B. Edgeworth, Morgan, Lewis & Bockius, Washington, D. C., for Allen-Bradley Co., Cutler-Hammer Inc., and Square D. Co.

Robert C. Barnard, John K. Mallory, Jr., Cleary, Gottlieb & Steen, Washington, D. C., for Allis-Chalmers Mfg. Co., Joslyn Mfg. & Supply Co., McGraw-Edison Co., Moloney Electric Co., Sangamo Electric Co., and Wagner Electric Corp.

Robert D. Larsen, Charles F. Young, Royall, Koegel, Harris & Caskey, Washington, D. C., for Arrow-Hart & Hegeman Electric Co. and Ward Leonard Electric Co.

Lloyd N. Cutler, Ezekiel G. Stoddard, Samuel A. Stern, Wilmer, Cutler & Pickering, Washington, D. C., for Carrier Corp.

Ephraim Jacobs, Hollabaugh & Jacobs, Washington, D. C., for Federal Pacific Electric Co.

Earl W. Kintner, Ralph S. Cunningham, Jr., Sidney Harris, John F. Bodle, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for Duncan Electric Co., Inc.

Francis M. Shea, Richard T. Conway, William H. Dempsey, Jr., Shea & Gardner, Washington, D. C., for General Elec. Co., Clark M. Clifford, Clifford & Miller, Washington, D. C., of counsel.

Bartholomew A. Diggins, Washington, D. C., for H. K. Porter Co., Inc.

Richard A. Whiting, Robert M. Goolrick, Steptoe & Johnson, Washington, D. C., for I-T-E Circuit Breaker Co.

Mac Asbill, Willis B. Snell, Charles L. Saunders, Jr., Sutherland, Asbill & Brennan, Washington, D. C., for Southern States, Inc. (formerly known as and named in the complaints as Southern States Equipment Corp.)

John S. Walker, Jones, Day, Cockley & Reavis, Washington, D. C., for the Clark Controller Co.

Leonard J. Emmerglick, Ellis Lyons, Perlman, Lyons & Emmerglick, Washington, D. C., for Westinghouse Elec. Corp.

John D. Lane, J. Carter McKaig, Hedrick & Lane, Washington, D. C., for Worthington Corp.

SIRICA, District Judge.

In 32 of the 46 [1] treble damage antitrust suits instituted under Section 4 [2] of the Clayton Act and now pending in this Court, defendants have joined in support of a motion under Rule 12(f) of the Federal Rules of Civil Procedure to strike all claims for injuries accruing prior to the four-year period of limitation as provided in Section 4B [3] and 5(b) [4] of the Clayton Act, and all allega-

1. Since the hearing on these motions, an additional suit, Civil Action No. 227-63, has been filed, bringing the total number of cases to 47.

2. Clayton Act § 4, 15 U.S.C. § 15 (1958). Suits by persons injured; amount of recovery

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

3. Clayton Act § 4B, 15 U.S.C. § 15b (1958). Limitations of actions

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

4. Clayton Act § 5(b), 15 U.S.C. § 16(b) (1958). Judgment in favor of Government as evidence; suspension of limitations

" * * * Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish

tions of fraudulent concealment. In the alternative defendants move, pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, for an order or judgment dismissing such claims or, pursuant to Rule 16, for the entry of a pretrial order disposing of the issue.

Rather than reviewing in detail the allegations of the complaints filed in these cases, it is sufficient to say that they arise out of the electrical equipment indictments returned in 1960 in the United States District Court for the Eastern District of Pennsylvania.[5] In general, plaintiffs, who are public corporations, city and state governments, complain of continuing agreements among the defendants to fix prices, submit collusive bids and price quotations and allocate sales among themselves on various items such as distribution transformers, circuit breakers, meters, etc.

In support of claims which in one case go as far back as 1948, and, in order to avoid the restrictive effects of the four-year limitation period of Section 4B of the Clayton Act, plaintiffs allege that defendants fraudulently concealed their violations; i. e., they employed deceptive schemes designed to conceal their damaging practices. In order to point with greater specificity to the charges made by plaintiffs, a paragraph of the complaint filed by the City of Piqua, Ohio, in Civil Action No. 2829–62, which is similar to allegations made by other plaintiffs, is here reproduced:

"12. The defendants and other participants in the aforesaid conspiracy have used various devices and practices to conceal the existence of the aforesaid conspiracy. These included secret meetings of officers and employees of the participants in hotels and other places throughout the country, often under cover of trade association and other ostensibly innocent conferences; placing telephone calls from public pay telephones or to and from private residential telephones of company representatives rather than using company office telephones; correspondence by means of plain envelopes without return address or other identifying marking, addressed to the residence of company representatives, rather than their offices; and the concealment and destruction of documents and records relating to the conspiracy. By means of these and other acts defendants and other participants in the conspiracy fraudulently concealed the existence of the combination and conspiracy; and plaintiff had no knowledge thereof and could not by the exercise of reasonable diligence have obtained knowledge of the existence of the conspiracy until the institution of the federal government proceedings described in paragraph 13 of this complaint."

The sufficiency of the above and other allegations is not contested at this time by defendants' motion, but instead, defendants attack plaintiffs reliance on the so-called doctrine of fraudulent concealment to toll the four-year limitation period of Section 4B. The attack has many avenues of approach, but basically it centers around their contention that no doc-

violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

5. At the present time there are more than 1800 treble damage civil antitrust suits concerning electrical equipment pending in various United States District Courts.

trine of fraudulent concealment exists, as such, in the federal judicial system.[6]

Prior to a consideration of the several points raised in the argument made by defendants, it is felt that a brief summary of the overriding consideration aimed at in the resolution of this difficult problem would serve a useful purpose. Therefore, with the following introduction, the Court will attempt to answer the arguments of defendants and state its reasons for adopting the conclusion that the four-year period of limitation of Section 4B is tolled by the fraudulent concealment of antitrust violations.

The Supreme Court, in Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232, 79 S.Ct. 760, 761, 762, 3 L.Ed.2d 770 (1959), has quoted the well-known maxim that "no man may take advantage of his own wrong." In the present situation it appears difficult to reach the conclusion that Congress was unmindful of this maxim when it considered and deliberated the amendment to the Clayton Act, proposed in 1955, establishing a uniform period of limitation in antitrust litigation. Since it is obvious that Congress in enacting antitrust legislation during the past seventy-odd years had as one of its main purposes a desire to make it economically unattractive to create monopolies, it would appear to be unreasonable to argue that in passing a statute of limitation in this area, Congress would permit violators to gain substantial immunity by merely devising elaborate schemes which avoid detection.

In considering this same problem, the United States Court of Appeals for the Eighth Circuit in its recent decision in Kansas City v. Federal Pac. Elec. Co., 310 F.2d 271, 284 (1962), has said:

"We are not persuaded to believe that Congress meant to proscribe and outlaw conspiracies and combinations in restraint of trade, only to reverse itself by enacting a statute of limitations that would reward successful conspirators. When the antitrust laws are violated, the wrongdoers who are successful in cloaking their unlawful activities with secrecy through cunning, deceptive and clandestine practices should not, when their machinations are discovered, be permitted to use the shield of the statute of limitations to bar redress by those whom they have victimized."

In support of their motion and in contrast to the view expressed above, defendants argue that no federal doctrine of fraudulent concealment existed prior to the enactment of Section 4B in 1955, or exists at this time, and thus could not have been in the mind of Congress during its deliberations. However, the

---

6. Transcript of Proceedings, January 25, 1963, pp. 9–10.

"MR. BARNARD:

\* \* \* \* \*

"How is it then that this apparently mandatory four-year statute has been opened by the courts? As I said earlier, the question is not one of Congressional power, bot (sic) the Congress clearly has the power, if it chooses to do so, to fix an absolute period. The words have been opened on two arguments or main bases. First the statement, I suppose it is really a dictum, by Justice Frankfurter in the Holmberg case, which is said to set up an overriding doctrine of fraudulent concealment applicable in these antitrust cases, and second, the remarks of a Congressman in the course of the debate in 1955 when the law was under consideration, and I would like to discuss both of these points, if the Court please.

"First, this so-called or supposed overriding Federal doctrine, but let me say at the outset, that I think that there is no Federal doctrine of fraudulent concealment. Some States have statutes or have a doctrine that has been loosely described as fraudulent concealment, but these statutes and rules vary as to their content and as to the cases to which they apply, and as to the circumstances under which tolling occurs.

"However, there never has been and I believe there is not now any Federal rule of fraudulent concealment. There is a Federal rule that in an action based on fraud the statute of limitations will be suspended until the discovery of the fraud on which the action is based, but this is not fraudulent concealment, and it certainly has had no application to these antitrust cases until the recent decisions which we have been discussing."

decisions in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874) and Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), would appear to refute this position.

In Bailey v. Glover, supra, an assignee of a bankrupt brought suit to set aside certain fraudulent real estate conveyances from the bankrupt to defendants. Faced with a two-year statute of limitation, plaintiff argued that the clandestine nature of the fraud tolled the statute. Agreeing with this position, the Supreme Court considered it equally applicable in law and in equity. In concluding that the tolling of the statute in the situation presented to it was a "sound and philosophical view of the principles of the Statute of Limitation" the Court stated:

"They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure." 88 U. S. (21 Wall.) 342, 349 (1874).

Defendants attempt to distinguish Bailey v. Glover, supra, by contending that the principle evolved in that case has application only where fraud is the gist of the action. Although this restrictive analysis might have merit in a consideration of the Bailey case by itself, the distinction would appear to weaken in light of the Holmberg v. Armbrecht, supra, decision.

In Holmberg, the Supreme Court considered a statute of limitation problem arising out of a suit in equity to enforce the liability imposed by the Federal Farm Loan Act on shareholders of a bank that had failed. The plaintiffs' action was filed after the state statute of limitations had run because, as plaintiffs contended, defendant had concealed his ownership of a portion of the bank stock by taking title under another name. Clearly, then, fraud was not the gist of the action. The fraud which had been perpetrated was done to conceal the liability which fell upon shareholders.

In arriving at its decision, the Court initially rejected the application of the state statute of limitations saying that the case before it concerned "not only a federally-created right but a federal right for which the sole remedy is in equity." Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L. Ed. 743 (1946). Then, applying the doctrine of laches, the Court cited Bailey and quoted language from it, to the effect that the bar of a statute of limitation will not begin to run until the fraud is discovered. The Court then concluded by saying:

"This equitable doctrine is read into every federal statute of limitation. If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16, the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit. (Citing cases). It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating construction required by that doctrine." Holmberg v. Armbrecht, supra, 327 U.S. at 397, 66 S.Ct. at 585, 90 L. Ed. 743.

Defendants emphasize the "equitable" nature of the language used by the Court and argue that a treble damage antitrust action is not an equity proceeding. Although this is true, it is also beyond doubt that the Court in Holmberg de-

rived its conclusion from Bailey, where the Court thought its decision applicable to law and equity.

Defendants appear to emphasize the fact that the words "fraudulent" and "concealment" are not used in combination in either Bailey or Holmberg. Though this arrangement of words is not present, the meaning of the phrase exists in reading those decisions in sequence. In addition, the phrase "fraudulent concealment" is not unknown in the federal judiciary. In earlier antitrust suits brought prior to 1955, the phrase was used when federal courts were compelled to apply state statutes of limitations. E. g., Crummer Co. v. Dupont, 223 F.2d 238 (5th Cir.), cert. denied, 350 U.S. 848, 76 S.Ct. 85, 100 L. Ed. 755 (1955); Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196 (9th Cir., 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951); Burnham Chem. Co. v. Borax Consol., 170 F.2d 569 (9th Cir., 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949); Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir., 1936). See also Annot., 173 A.L.R. 576.

In the Foster & Kleiser Co. case, the Ninth Circuit Court of Appeals stated, with reference to a California statute of limitations and California case law, that:

"[W]hen fraud is not the gravamen of the action, in order to toll the applicable statute of limitations, two factors must be present: (1) Fraudulent concealment; (2) non-discovery, that is, absence of facts that would put a party upon notice of the cause of action. Mere ignorance of the injury complained of, or of the facts, constituting such injury, will not prevent the running of the statute." 85 F.2d 742, 752 (9th Cir., 1936).

Although it is conceded that the discussion concerned a state statute of limitation, the language above quoted might have been appropriately inserted into the Holmberg opinion. In any event, the term "fraudulent concealment" will be found in earlier federal antitrust litigation and Congress, during its deliberations prior to the enactment of Section 4B, was well aware of this.[7]

It is interesting to note at this point that Bailey and its principle is not unknown in this jurisdiction. See Johnson v. Taylor, 73 F.Supp. 537 (D.C.D.C. 1947). Although its application thus far appears to have been restricted to actions in which fraud formed the gist of the

7. 96 Cong.Rec. 10442 (1950).
"Mr. HALE.
  *     *     *     *     *
"I think it is altogether desirable that there should be a uniform period of limitations applicable throughout the Nation, and that we should not be remitted to the various limitation periods prescribed by the several State statutes. It seems to me regrettable, however, that there is no provision in the bill that the statutory period of limitation shall not commence to run until a conspiracy brought about by fraud or concealment shall become known to the plaintiff. I should like to inquire, if I may, of the gentleman from New York [Mr. Celler], whether I am correct in apprehending that this bill would not affect any State statute concerning the effect of fraud or concealment on the period of limitation.
"Mr. CELLER. Mr. Speaker, if the

gentleman will yield, may I be permitted to read a note I made in reference thereto?—
  "'Several States by statute or judicial decree provide for the tolling of the limitation period during the time the defendant fraudulently conceals the cause of action from the plaintiff or is otherwise guilty of fraudulent conduct. I am informed that frequently the statutory period does not begin to run until the plaintiff has discovered the facts of his cause of action which have been fraudulently concealed by the defendant. This bill is not intended to change those rules of the various States insofar as they presently apply to triple-damage actions under the antitrust laws. The period of 6 years, under this bill, will be uniform throughout the United States but the State rules benefiting a plaintiff in a case where the defendant has been guilty of

action, it would appear that no decision in this jurisdiction irrevocably binds it to strictly fraud actions.

At this point it might also be in order to consider defendants' argument, touched on earlier, that a federal tolling doctrine applies only to actions in which fraud forms the sole basis for the cause of action and that there is no existing federal "fraudulent concealment" doctrine. Defendants contend that Bailey states the federal fraud rule and that Holmberg does not enlarge upon it. This Court does not agree. Although a distinction is discernible between actions based on fraud and actions in which fraud is used to conceal an injury, the importance of the distinction fades in significance when Bailey, Holmberg and the legislative history of Section 4B of the Clayton Act, (to be considered in detail, infra) are considered together.

Further argument advanced by defendants, in opposition to plaintiffs' contention that a doctrine of fraudulent concealment applies in this case is (1) that Section 4B speaks in absolute terms—i. e., "forever barred"—and (2) Section 5(b), which should be considered in connection with Section 4B, provides for tolling only with respect to government litigation. Although a literal reading of Section 4B would support the conclusion that it is subject to no exception, the absolute language of the statute is not surprising. Statutes of repose are by their nature absolute in expression and yet it is not unusual that exceptions are read into them. E. g., Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) ["*No action* shall be maintained * * * unless commenced within three years * * *"]; Exploration Co. v. United States, 247 U. S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918) ["Suits * * * to vacate and annul patents * * * *shall only* be brought within six years * * *"]; Searl v. Earll, 95 U.S.App.D.C. 151, 221 F.2d 24 (1954) [Usurious interest may be recovered *provided* said suit be begun within one year from the date of such payment."]

Therefore, something more than mere absolute language must be shown before exceptions will be ignored. In this connection, defendants point to the specific tolling provision of Section 5(b) and argue that it precludes all other tolling exceptions to Section 4B. That argument is weakened, however, upon a consideration of plaintiffs correct assertion that section 5(b) is not a new addition to the Clayton Act but is merely a modification of a pre-1955 tolling provision which existed throughout the period during which state statutes of limitation were applied to antitrust litigation.[8] If the tolling provision of Section 5(b) were meant to be exclusive, it would surely have been argued prior to 1955 that this section of the Act superseded any state doctrine of fraudulent concealment. In addition, the purpose of Section 5(b) is merely to assist the private litigant in taking advantage of the exposure of antitrust violations through government action.[9]

Great importance is placed on the 1955 Antitrust Report of the Attorney General in support of defendants' contention that a literal reading of Section

fraud or of some other proscribed conduct will remain in effect.'

"I would say that the answer to the inquiry would be that you need have no concern on that score.

"Mr. HALE. I thank the gentleman for his answer. I am very pleased with the situation as he describes it."

8. 38 Stat. 731 (1914).

"Sec. 5.

\* \* \* \* \*

"Whenever any suit or proceeding in equity or criminal prosecution is insti-

tuted by the United States to prevent, restrain or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

9. S.Rep. No. 619, 84th Cong., 1st Sess. 6 (1955); H.R.Rep. No. 422, 84th Cong., 1st Sess. 8 (1955); U.S.Code Cong. and Admin.News 1955, p. 2328.

4B is consistent with Congressional intent. This argument is advocated since it can be presumed Congress placed more than slight reliance on its recommendations. Nowhere, argue defendants, is mention made of Bailey and Holmberg or the equitable rule of tolling in antitrust cases. It is correct that the Report does not cite Bailey or Holmberg by name, but in connection with a discussion concerning the circumstances under which a state statute of limitations would be tolled, the Report, in a footnote, makes this observation:

"A few cases question the circumstances under which the statute will be suspended by plaintiff's ignorance of his claim. One court applied the *generally applicable federal doctrine* that a statute of limitations is suspended until discovery of the fraud on which the action is based." (Winkler-Koch Engineering Co. v. Universal Oil Products Co., 100 F. Supp. 15, 29 [S.D.N.Y.1951]). Report of the Attorney General's National Committee to Study the Antitrust Laws, 382 n. 73 (1955). [Emphasis supplied.]

Plaintiff, in the Winkler-Koch case, complained of damages which had resulted from a conspiracy which eliminated plaintiff from the business of designing and installing distillation equipment. With the object of eliminating plaintiff from competition, one of the defendants had by fraud obtained a court decision ruling that plaintiff's process infringed defendant's patents. In concluding that the limitations period did not begin to run until plaintiff learned certain facts concerning the fraud, the Court said:

"10. Under federal law when a federal cause of action involves a fraud the running of a federal statute of limitations is suspended until discovery of the fraud, *despite the failure of the statute to contain such a qualifying provision.* This equitable doctrine or mitigating construction is read into every federal statute of limitations.

"11. Where, as here, a federal statute of limitations has not been provided in respect of private actions for damages under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, and in consequence thereof this Court must adopt and apply the statutes of limitations of the States of New York and Kansas, those adopted statutes are subject to the equitable doctrine and mitigating construction set forth in conclusion No. 10. It would be incongruous to confine a federal right within the bare terms of a state statute of limitations unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute of limitations would be given the mitigating construction required by that doctrine." Winkler-Koch Eng'r Co. v. Universal Oil Prod. Co., 100 F.Supp. 15, 29 (S.D. N.Y.1951) (Emphasis supplied.)

This excerpt from a decision cited in the Attorney General's Report appears to be a clear expression of an existing federal doctrine of fraudulent concealment. Although the Holmberg decision is not cited by the Court in the language quoted, the latter portion is identical to that of Holmberg.

During the six-year period prior to the adoption of the present Section 4B, a number of other proposed amendments were submitted to members of Congress for their consideration.[10] Early proposals contained a six-year period of limitations, and the present four-year period was the result of a compromise based essentially on an average of the state statutes of limitations which had previously been applied.[11] In addition, sponsors of earlier proposals attempted to

10. E.g., S. 1910, 81st Cong., 1st Sess. (1949); H.R. 7905, 81st Cong., 2d Sess. (1950); H.R. 8763, 81st Cong., 2d Sess. (1950); H.R. 3408, 82d Cong., 1st Sess. (1951).

11. S.Rep. No. 619, 84th Cong., 1st Sess. 5 (1955); H.R.Rep. No. 422, 84th Cong., 1st Sess. 7 (1955).

include what might be called "discovery" provisions. Basically, these proposals contained language which would toll the running of a period of limitations in a conspiracy case until "after the plaintiff discovered (or, by the exercise of reasonable diligence, should have discovered) the facts relied upon for proof of the conspiracy."[12]

During the hearings on these earlier proposed amendments, serious objections were made to the insertion of "discovery" language. Opponents were concerned that any stated limitation period would be meaningless if the accrual of a cause of action hinged merely upon the plaintiff's "discovery" of the "facts." The insertion of this mental element into the statute and the language utilized was criticized as rendering the limitation period vague and uncertain.[13] The final proposal and present Section 4B contain no such "discovery" provision.

Defendants rely upon this rejection of the "discovery" provisions as an indication of Congressional rejection of any fraudulent concealment doctrine and any other tolling exception save the one provided for in Section 5(b). Further, defendants cite the case of Burnham Chem. Co. v. Borax Consol., 170 F.2d 569 (9th Cir., 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949) as a decision which rejected the application of a federal fraudulent concealment doctrine and served as the impetus for a futile legislative attempt to insert such a doctrine into a uniform federal statute of limitation in the antitrust area.

In this attack, defendants fail initially to distinguish between the concepts presented by "discovery" and fraudulent concealment and, in addition, place an interpretation on the Burnham decision which varies from that of this Court.

If Congress had adopted the broad discovery concept offered by its proponents, the limitation period of Section 4B would have been, as its critics advised, a futile attempt at defining a statute of repose. Any statute of limitation which depended solely upon the *discovery* of a cause of action by the injured party would render it ineffective against attempts to stir up stale claims. Even a flagrant violation of rights would be tolled by the mere ignorance of the victim. Thus, it is clear that "discovery" is much broader in scope than the doctrine of fraudulent concealment, which finds application only where active and clandestine steps have been taken to shield a cause of action.

With regard to the Burnham case, this Court reads the Ninth Circuit opinion as not rejecting the doctrine of fraudulent concealment but concluding that it was inapplicable in the situation presented. The Court of Appeals agreed with the lower court's conclusion that "[t]here has been no evidence * * * of any fraudulent representation or concealment by the defendants of the plaintiff's cause of action which deterred the plaintiff from timely presentation of its claim in this court." Burnham Chem. Co. v. Borax Consol., 170 F.2d 569, 574 n. 4. In addition, the court itself stated:

"[T]he record firmly establishes as a fact that during the time from May 17, 1929 to October 10, 1939 appellant knew, or had good cause and reason to believe, that its business had been theretofore damaged and that it had been driven out of business by acts of appellees which violated the antitrust laws of the United States; that appellant was, during this period, convinced that it had a good case against appellees for the damage it had then suffered and that its attorneys so believed and so advised it." Id. at 578.

The problem in Burnham, thus, was a question of the sufficiency of plaintiff's evidence to prove a case for the application of fraudulent concealment, not a

12. H.R. 7905, 81st Cong., 2d Sess. (1950).

13. Hearings Before the Subcommittee on the Study of Monopoly Power of the House Committee on the Judiciary, 81st Cong., 1st Sess., Ser. 14 pt. 5, at 21–23, 73–74, 87–88, 93–94 (1950).

question of the soundness of the doctrine itself.

The striking factor which makes defendants' contention that Burnham rejected a federal doctrine of fraudulent concealment an unusual one, is that the Court in Burnham was concerned with the application of a California statute of limitation and California decisions as to fraudulent concealment.

It is true that plaintiff, after the Ninth Circuit decision, took his cause to Congress. In so doing, however, it appears that plaintiff's aim was not to insert a federal doctrine of fraudulent concealment into a uniform federal statute of limitation. It was instead an attempt to insert a broad "discovery" provision, far beyond the theory of fraudulent concealment, which would toll the statute until sufficient facts were uncovered by a prospective antitrust plaintiff.[14] The distinction between a "discovery" provision and the fraudulent concealment doctrine has been discussed earlier.

Other legislative history, although not clearly dispositive of the issue, sheds light on the intent of Congress in enacting Section 4B. In connection with an attempt by Congressman Patman, a staunch advocate of the "discovery" provisions, to insert the words "and became known" into the final version of Section 4B, this colloquy occurred:

"Mr. CELLER. The statute of limitations will start running from the time the action accrues, not from the time of discovery. If you make it time of discovery, then you practically have no statute of limitations at all. An action could have accrued and the person aggrieved might not have heard of it for 20 years. Under the suggested amendment he would have a right to bring an action after 20 years, after the evidence will have been lost, and the defendant would be put in a rather deplorable situation in that regard. We provide that the 4-year statute shall start to run from the time of the accrual of damages, from the time the wrong was done, not from the time of discovery.

"Mr. PATMAN. Even in the case of fraud or conspiracy?

"Mr. CELLER. No. In the case of fraud or conspiracy the statute of limitation only runs from the time of discovery.

"Mr. PATMAN. That is the point I wanted to make sure of. You are not attempting to change that particular part of it?

"Mr. CELLER. Not at all." 101 Cong.Rec. 5132–33 (1955).

This colloquy, read together with the other legislative history [15] and the pre-1955 Court decisions, referred to earlier, would appear to indicate that Congress was not attempting to abrogate the es-

14. See Hearing on S. 1910 Before a Subcommittee of the Senate Committee on the Judiciary, 81st Cong., 1st Sess. (1949).

15. 101 Cong.Rec. 5129 (1955).

"Mr. PATMAN. Does that 4 years apply to conspiracy cases? Suppose there is a conspiracy, and it is 10 years before the conspiracy is known.

"Mr. CELLER. In the case of conspiracy or fraud, the statute only runs from the time of discovery.

"Mr. PATMAN. From the time of the discovery?

"Mr. CELLER. In conspiracy cases and cases of fraud.

"Mr. PATMAN. And it is not the object or intention to change that at all?

"Mr. CELLER. That is correct.

Id at 5130.

"Mr. PATMAN. Does the gentleman agree with the Chairman that the 4-year limitation does not commence to apply in a conspiracy case until the conspiracy becomes known?

"Mr. KEATING. I would want to have the law on that checked by the counsel for our committee. I have an impression that there have been decisions under the present conspiracy statute, which is not in any way interfered with by this legislation, to the effect that the statute of limitations does not begin to run until discovery of the conspiracy. But I would not want to make a positive assertion to the gentleman on that point without further investigation of the law.

tablished federal doctrine of fraudulent concealment.

In addition to the arguments already considered, defendants also contend that Section 4B should not be extended beyond a literal reading of it since it is substantive rather than procedural and since the antitrust laws are penal rather than remedial in nature.

With reference first to the substantive versus procedural argument, it is not the intention of this Court to embark upon an extensive discussion concerning the meaning and implication of those words in view of the fact that the uniform federal limitation period of Section 4B was enacted about 65 years after the right to recover treble damages was created. It can hardly be said that the right of a plaintiff to a treble damage action is strictly subject to the statute of limitations. Beyond that, the legislative history of the bill would appear to clearly express Congressional intent in this regard.

In connection with questions concerning the effect of the amendment on pending litigation, this discussion took place:

> "Mr. MURRAY of Illinois. Then am I correct in assuming that this limitation provided by this amendment is strictly a procedural limitation and has nothing to do with substance?
>
> "Mr. QUIGLEY. It was the specific purpose of the committee in reporting this bill to in no way affect the substantive rights of individual litigants. It is simply a procedural change and suggested with the thought of setting up a uniform statute of limitations. That is the sole purpose." 101 Cong.Rec. 5131 (1955).

With regard to the question of the inherent nature of antitrust legislation, it appears that a split of authority does exist. See Englander Motors, Inc. v. Ford Motor Co., 293 F.2d 802, 804–807 (6th Cir., 1961) and cases cited therein. The majority view, however, appears to be in favor of the conclusion that treble damage actions, despite the fact that actual damages are not strictly the measure of recovery, are remedial in nature. In any event it is the opinion of this Court that the doctrine of fraudulent concealment has an overriding force and has application in the present situation.

The issue of the construction of Section 4B has recently arisen in various district courts and has also been decided by Appellate Courts.[16] Although there is conflict within the district courts, the Second and Eighth Circuit Courts of Ap-

---

"Mr. PATMAN. Notwithstanding the fact that the discovery was made years later?

"Mr. KEATING. I would be happy to yield to the chairman of the committee, who may have investigated that precise point.

"Mr. CELLER. Yes, I have. The statute only said from the time of discovery in that kind of case. The basis for my conclusion in that regard is the cases themselves. There are innumerable cases on that score.

"Mr. KEATING. I am happy to have that enlightenment."

16. In pending electrical equipment actions, six District Courts have ruled that fraudulent concealment tolls the statute of limitations: Department of Water of City of Los Angeles v. Allis-Chalmers Mfg. Co., S.D.Cal., Jan. 9, 1963, 213 F.Supp. 341; San Antonio v. General Elec. Co., W.D.Tex., Nov. 20, 1962;

Public Serv. Co. of Colorado v. Allen-Bradley Co., D.Colo., Sept. 11, 1962; Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 210 F.Supp. 557 (N.D.Ill.1962); United States v. General Elec. Co., 209 F.Supp. 197 (E.D.Pa. 1962); Atlantic City Elec. Co. v. General Elec. Co., 207 F.Supp. 613 (S.D.N. Y.1962).

Three District Courts in the pending electrical equipment cases have held that fraudulent concealment does not toll the statute: Brigham City Corp. v. General Elec. Co., 210 F.Supp. 574 (D.Utah 1962); Kansas City v. Federal Pac. Elec. Co., 210 F.Supp. 545 (W.D.Mo.1962); Public Serv. Co. of New Mexico v. General Elec. Co., D.N.M., July 25, 1962.

Also, two other District Courts have ruled in favor of tolling: Gaetzi v. Carling Brewery Co., 205 F.Supp. 615 (E.D.Mich.1962); Dovberg v. Dow Chem. Co., 195 F.Supp. 337 (E.D.Pa.1961).

peal have found in favor of tolling.[17] This Court finds itself in accord with the views expressed by those Courts which have decided that there does exist a federal doctrine of fraudulent concealment applicable to Section 4B. But, the Court feels compelled to advise plaintiffs that the present decision in no way removes the burden assumed by them to substantiate the allegations of the complaints regarding fraudulent concealment. As stated earlier, the motion did not in any way test the sufficiency of these allegations. It has been true in the past that close scrutiny of charges of fraud sometimes discloses their deficiencies. E. g., Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir., 1961), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196 (9th Cir., 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951); Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir., 1936); Gaetzi v. Carling Brewing Co., 205 F.Supp. 615 (E.D.Mich.1962).

The admonition of the Eighth Circuit in Kansas City v. Federal Pac. Elec. Co., is clear and applicable in this regard:

"It is to be remembered that while a plaintiff may by proper allegations of fraudulent concealment initially avoid the time limitation bar of § 4B, it remains for the plaintiff to support such an allegation by competent and probative evidence. If plaintiff fails to carry the burden in this respect, the judicial processes are such as to insure orderly and efficient administration of justice." 310 F.2d 271, 284 (8th Cir., 1962).

In conclusion, for the reasons above stated, defendants' motions are therefore denied.

The Court is of the opinion, however, that the question presented involves a controlling question of law as to which there is substantial ground for differ-ence of opinion and that an immediate appeal from the Court's order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

The order will so provide.

---

17. Atlantic City Elec. Co. v. General Elec. Co., 2d Cir., 1962, 312 F.2d 236; Kansas City v. Federal Pac. Elec. Co., 310 F. 2d 271 (8th Cir., 1962).